**Haile HIRPA, Plaintiff,**

v.

**IHC HOSPITALS, INC., d/b/a/ Logan Regional Hospital and Merrill C. Daines, M.D., Defendants.**

No. 1:90–CV–00086.

United States District Court,
D. Utah,
Northern Division.

July 13, 2001.

Patricia W. Christensen, David C. Reymann, Jeffrey J. Hunt, Parr Waddoups Brown Gee & Loveless, Salt Lake City, UT, for plaintiff.

Elliott Williams, Williams & Hunt, Salt Lake City, UT, for defendant Merrill C. Daines, M.D.

Charles W. Dahlquist, II, David J. Hardy, Kirton & McConkie, Salt Lake City, UT, for defendant IHC Hospitals, Inc., dba Logan Regional Hospital.

Kathleen Switzer, Salt Lake City, UT, who joined in plaintiff's motion, also participated.

## ORDER

J. THOMAS GREENE, District Judge.

This matter is before the court on Plaintiff's Motion for Award of Attorneys' Fees and Costs. The motion has been extensively briefed. The court heard oral argument on March 6, 2001, and permitted post hearing filings. Plaintiff was represented by Patricia W. Christensen, David C. Reymann and Jeffrey J. Hunt of Parr Waddoups Brown Gee & Loveless; defendant Merrill C. Daines, M.D., was represented by Elliott Williams of Williams & Hunt; and defendant IHC Hospitals, Inc., dba Logan Regional Hospital was represented by Charles W. Dahlquist, II and David J. Hardy of Kirton & McConkie. Kathleen Switzer, who joined in plaintiff's motion, also participated. The motion was taken under advisement and submitted for decision.

## STATEMENT OF FACTS

This action arises out of the death of Yeshi Wordoffa during the birth of a child in 1989, at the Logan Regional Hospital. On the date of Ms. Wordoffa's death, Dr. David Perkins, Pathologist, performed an autopsy, which included review of microscopic slides of tissue which he had directed to be made from various organs of the body. As a result of his examination, Dr. Perkins concluded that the cause of Ms. Wordoffa's death was acute cardiac tamponade, which was set forth in the Death Certificate.

Plaintiff filed a medical malpractice action in September 1990, naming several defendants including health care providers and the hospital. All were claimed to be negligent in failing to treat Ms. Wordoffa properly for the condition of cardiac tamponade. Plaintiff commenced discovery shortly after the case was filed, and on February 25, 1991, the deposition of Dr. Perkins was taken. In that deposition, Dr. Perkins discussed having previously examined the slides containing tissue samples and again attributed the cause of Ms. Wordoffa's death to cardiac tamponade. Also, he excluded amniotic fluid embolus (AFE) as the cause of death.[1] Defendants were relying on the clinical diagnosis of Dr. Gary Hankins who had opined that the cause of death most likely was an (AFE), and that the slides referenced by Dr. Perkins could not be regarded as conclusive because they were too few in number to show the true condition of the decedent's body. Defendant's position was that with AFE as the cause of Ms. Wordoffa's death, the medical malpractice claim could not succeed because in most cases an AFE is fatal even when there is a timely diagnosis and treatment.

In May 1994, the deposition of Dr. Gary Hankins was taken. Dr. Hankins reiterated his opinion that the cause of death was an amniotic fluid embolus (AFE) notwithstanding the absence of laboratory evidence to that effect, and notwithstanding the uncontroverted testimony of Dr. Perkins that AFE had not been seen by him

---

1. The death certificate, signed by Dr. Perkins, attributes the cause of Ms. Wordoffa's death as acute cardiac tamponade. At his deposition, Dr. Perkins described the condition as follows: "During diastole—well, when the heart pumps systole during diastole, it relaxes and the blood had to come back in; during tamponade when there's pressure on the outside of the heart, it doesn't allow the blood to come back into the chambers completely." He further states: "my supposition was the fluid combined with the valsalvic pressures of labor, the two together may have prevented complete filling so she was not profusing well." Regarding Dr. Perkins testimony that AFE was not the cause of death, he testified that although Dr. Mortenson (one of the patient's doctors) strongly believed Ms. Wordoffa suffered an amniotic embolus, "we didn't find one." Deposition of Dr. K. David Perkins at p. 35–36, 65, February 25, 1991.

in the tissue used in the microscopic slides. Dr. Hankins regarded the slides as inconclusive evidence of the cause of death because they were an insufficient sample of the total amount of surface tissue in the lungs.[2]

The slides were not used as exhibits at either the deposition of Dr. Perkins or the deposition of Dr. Hankins. Despite full knowledge of the slides and that they had been discussed by the two key witnesses in the aforesaid litigation, plaintiff never formally requested production by defendant Logan Regional Hospital of the slides containing the tissue samples.[3] Both parties appeared to regard the slides as unnecessary, at least for their case in chief, and neither side listed them as trial exhibits.

Apparently both sides believed that the slides would reveal nothing not already stated in the uncontroverted testimony of Dr. Perkins: that he had examined the slides to determine the possible existence of AFE and "we didn't find one." This was the posture of the case relative to the slides until much later in 1999 on the eve of a scheduled trial date.

The major focus of the case switched from the cause of death to the affirmative defense raised by defendants' dispositive motions under Utah's Good Samaritan statute. That matter was extensively briefed and argued, and resulted in rulings of dismissal by the court as to all defendants.[4] The district court Orders of Dismissal were appealed, but the appeal was

---

2. The surface volume of the lungs is the size of a tennis court if you spread it out. And as best as I can tell from looking here at the autopsy, I can't tell how many microscopic slides were done. But there is nothing to suggest that there was more of that tennis court looked at than the volume of one or two postage stamps, which I would have considered to be grossly inadequate to end up—to exclude the process. Now, I'm not criticizing Dr. Perkins and saying he didn't do what all other pathologists would have done as far as the amount of sampling. But I don't think it's adequate to have excluded [AFE].
Deposition of Dr. Gary Hankins, p. 16—May 26, 1994.

3. Plaintiff contends *in his memorandum* in support of motion for attorneys fees that an informal oral request for the slides was made by his original counsel in conversation with defendants' counsel and a *representative of Logan Regional Hospital*, following Dr. Perkins' deposition in *1991*. The Memorandum recites that it was represented that the slides were not in existence because they had been destroyed by the hospital. However, *in the affidavit* by the original attorney for plaintiff, Norman Younker, reference is made to a private conversation with *Dr. Daines' counsel* (no hospital representative present) after the deposition of Dr. Hankins in *1994*. Mr. Younker avers that he was told that "no pathology slides existed because the hospital's

pathologist had failed to sample or test for the presence of [AFE]." Norman J. Younker Affidavit, February 26, 2001 at p. 2. The statement by Mr Younker sets forth nothing about destruction of slides, and simply reflects the understanding of the lawyers that no pathology slides (other than the slides referenced by Dr. Perkins and Dr. Hankins) were ever in existence concerning a sampling for AFE. He made no mention of a hospital representative being present at the alleged conversation. Mr. Younker contended that is why no formal discovery was conducted and no further inquiries were made by plaintiff about the slides. In any event, the oral request for laboratory slides was never followed up or otherwise formally pursued. Plaintiff made no attempt at any time prior to 1999 to document or establish the facts relative to what happened to the slides which had been referred to by Dr. Perkins and Dr. Hankins and made no formal or written request specifically referring to the slides. IHC–Logan, however, has submitted affidavits by the persons claimed by plaintiff to have been involved, all to the effect that a representation that the slides had been destroyed was never made by Logan Regional Hospital. Based on a review of all available materials, it appears to the court that no such affirmative representation was ever made by a representative of Logan Regional Hospital.

4. Memorandum Decision and Order dated October 27, 1994.

abated pending a decision by the Utah Supreme Court on a question certified to that court by the Tenth Circuit as to "whether Utah's Good Samaritan Act applies to medical personnel responding to an in-hospital emergency." The Utah high court held that

> doctors are protected by the Good Samaritan Act when they respond to an in-hospital emergency, if they had no preexisting duty to do so. *Hirpa v. IHC Hosp., Inc.*, 948 P.2d 785, 790 (Utah 1997).

Thereafter, the case was again presented to the Tenth Circuit. After further briefing and argument the case was remanded back to the district court for further proceedings.[5] By that time, the only remaining defendants were the treating physician Dr. Daines and the Logan Regional Hospital. Also, the original counsel for plaintiff was no longer involved.

The case was finally and firmly set for trial to commence on October 6, 1999. The parties had been ordered to provide disclosures pursuant to Rule 26(a)(1) by March 3, 1999, and by that date defendant Daines responded by stating that "all relevant documents, including medical records, have already been produced." On March 1, 1999, counsel for IHC–Logan sent a letter to plaintiff's attorneys stating, "I am not aware of any information that has not already been disclosed and provided by the hospital defendant. If you believe there is anything further I should look into, please let me know." Plaintiff provided no response to this communication which in any way had to do with laboratory slides. Plaintiff made no request that slides be provided, and neither side mentioned or referred to the slides in connection with the disclosures due on March 3, 1999. Neither side listed the slides as exhibits or potential exhibits.

As the trial date approached, in a last minute check for trial preparation on August 31, 1999, counsel for Dr. Daines requisitioned Logan Regional Hospital for the slides which had been prepared at the request of Dr. Perkins in 1989 after the death of Ms. Wordoffa. He was told that the slides were not to be found and that all such materials predating 1990 had been destroyed as part of a routine procedure. Later, counsel attempted to determine whether, even though the slides had been destroyed, Logan Regional Hospital had maintained a log book record that would show how many laboratory slides were prepared at the time of the autopsy. The purpose of this inquiry was to evaluate whether the number of slides was so sparse and minimal as to be helpful in cross-examination of Dr. Perkins. He had hoped to be able to establish that although the slides did not show any evidence of an AFE, it was still possible that an AFE was the cause of death given the large amount of lung tissue which was not examined or contained in the slides. Counsel for Dr. Daines was informed, after a thorough search by Logan Regional Hospital, that the slides themselves and a log book had been located, whereupon counsel decided to have the slides looked at and reviewed by knowledgeable physicians. After such examination, three pathologists who participated in the review indicated that the slides showed unequivocal evidence of an AFE. When that revelation was made, counsel for plaintiff was notified.

On September 21, 1999, counsel for Dr. Daines filed a Motion to Supplement Witness and Exhibit Lists for the purpose of introducing the slides and associated testimony at trial. The plaintiff subsequently filed a Motion in Limine to Preclude Defendants from Introducing the Autopsy

---

**5.** *Hirpa et al. v. IHC Hospitals, Inc, dba Logan Regional Hospital, Merrill C. Daines, State of Utah,* Intervenor, 98 CJ C.A.R. 1589, 141 F.3d 1184 (March 30, 1998).

Slides for failure to provide them to plaintiff as part of the disclosures required on March 3, 1999, pursuant to Rule 26(a). In an Order dated October 7, 1999, after weighing and balancing the positions and matters raised by both sides, the court granted the defendants' Motion to Supplement Witness and Exhibit Lists and denied the plaintiff's Motion in Limine, but reserved ruling on whether sanctions against the defendants should be ordered because of failure to disclose. The trial date was stricken, and there followed a process mutually agreed upon of examination of the autopsy slides by an independent laboratory. That examination confirmed positively that the slides did reveal the existence of an AFE. Also, Dr. Perkins further examined the slides and confirmed that he had been mistaken and that the cause of Ms. Wordoffa's death was AFE.

In December 2000, in recognition that Ms. Wordoffa had suffered an AFE which caused her death, plaintiff stipulated to dismissal of his claims. Plaintiff then filed the pending motion to recover attorney fees and costs from March 3, 1999 forward, arguing that as a matter of law defendants were required to provide the slides by that date as part of required discovery disclosures pursuant to Rule 26(a) Fed.R.Civ. Proc.

For the reasons set forth above and discussed hereinafter, the court finds that defendants have carried the burden and demonstrated that there was substantial justification and harmlessness in their failure to make disclosure of the slides on March 3, 1999.

## STANDARD FOR AWARDING ATTORNEY FEES FOR VIOLATION OF RULE 37(c)(1)

Rule 37(c)(1), Fed.R.Civ.Proc. provides: A party that *without substantial justification* fails to disclose information required by Rule 26(a) or 26(c)(1), or to amend a prior response to discovery as required by Rule 26(e)(2) is not, *unless such failure is harmless*, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. *In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include* any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure. (Emphasis added).

## ANALYSIS

### SUBSTANTIAL JUSTIFICATION

The Tenth Circuit has stated that "determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir.1999).

 A persuasive district court case within the Tenth Circuit contains this discussion of the matter:

[u]nder Rule 37(c)(1), the court must first consider whether the party has established "substantial justification" for the failure to disclose and then consider whether the failure to disclose was "harmless." Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance. Failure to comply with

the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure. The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosure. *Nguyen v. IBP, Inc.* 162 F.R.D. 675, 679–80 (D.Kan. 1995).

Rule 26(a)(1) Fed.R.Civ.Proc. provides, in relevant part, that

> a party *must,* without awaiting a discovery request, *provide to other parties:*
>
> \* \* \* \* \* \*
>
> (B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the *disclosing party may use* to support its claims or defenses, *unless solely for impeachment.*

Fed.R.Civ.P. 26(a)(1). (Emphasis added.)

■ The primary issue presented here is whether there was "substantial justification" for defendants' failure to provide the microscopic slides at the time of required disclosures on March 3, 1999. Plaintiff apparently intended in its case in chief to rely on Dr. Perkins' testimony that he had examined the slides, determined that Ms. Wordoffa died as a result of cardiac tamponade, and positively found no evidence of an AFE. Defendants' defense was that it was probable that Ms. Wordoffa died of an AFE, discounting Dr. Perkins' analysis and testimony as inconclusive. Apparently, both sides were laboring under a mutual mistake of fact that the slides did not reveal any evidence of an AFE. Both sides erroneously believed that the slides could reveal nothing not already known. The only apparent use for the slides at trial, if they did exist, was for impeachment purposes. Accordingly, for whatever reason, use of the slides at trial by either side as initial case in chief exhibits was not contemplated. On or before March 3, 1999, neither side had ever taken any steps to find or designate the slides as potential exhibits despite full knowledge by both sides about what Dr. Perkins said the slides revealed and what they failed to reveal as to the cause of death.

The facts clearly demonstrate that the plaintiff well knew and believed that the slides contained lung tissue samples from Ms. Wordoffa which showed evidence of cardiac tamponade. The slides were discussed in Dr. Perkins' deposition in February of 1991, and again in Dr. Hankins' deposition in May of 1994, although neither Dr. Perkins nor Dr. Hankins had the benefit of the slides as exhibits at their depositions. Armed with the knowledge that the slides were the very foundation stones of Dr. Perkins' opinion that AFE was not the cause of death, and that they evidenced the existence of cardiac tamponade, plaintiff apparently did not believe he needed the slides and did not ever formally request production of the slides, or attempt by subpoena or formal discovery to obtain them. Moreover, plaintiff did not require documentation of the whereabouts of the slides, or require testimony or proof concerning alleged destruction of the slides, or inquire why there were no laboratory samples to evidence testing for AFE as Mr. Younker allegedly had been told by counsel for Dr. Daines. (See Fn.3, *supra.*) Manifestly, before counsel for defendant Dr. Daines stumbled on the evidentiary significance of the slides, plaintiff had made no serious or lawyer-like attempt to obtain them from the defendants or to document the facts about their alleged non existence or destruction.

■ Failure to provide the slides in this case is analogous to the inadvertent omission of a potential witness known to all

parties.[6] In such cases, and in this case, defendants could reasonably conclude that they had no duty imposed by Rule 26 to conduct an investigation and provide the slides which were believed by both sides to contain nothing that the uncontroverted testimony of Dr. Perkins already established. In this regard, Professor Moore has stated:

> If a rational legal mind could conclude, without the excessive strain that only self-serving motives would tolerate, that the duties which the law imposes did not require production of the evidence, the dispute should be deemed genuine, the parties position would be deemed substantially justified, and no sanction would be imposed. *Moore's Federal Practice, supra* § 37.62.

Moreover, nothing in the evidence leads the court to believe or find that the defendants acted in bad faith. *See Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3rd. Cir.1995) (holding defendant's failure to supply names of two witnesses who would testify at trial was harmless when there was no reason to believe defendant acted in bad faith and plaintiff knew names of witnesses and scope of their knowledge well before trial).

Based on the findings, analysis and considerations set forth above, it is apparent to the court that under the circumstances of this case a reasonable person would be persuaded and satisfied that the parties could differ as to whether defendants were required to provide the slides in question in order to comply with the general terms of Rule 26(a)(1), a fortiori, in view of the lack of a specific request for the slides by plaintiff. Accordingly, this court rules that there was a reasonable basis in law and

fact for defendants' failure to provide the slides on March 3, 1999, and that defendants were substantially justified in failing to obtain and provide them to plaintiff by that date.

### HARMLESSNESS

 The following additional factors are pertinent in determining whether non disclosure was harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.,* 170 F.3d at 993. This court previously weighed these and other factors in granting defendants' motion to admit the slides and related testimony. The court now determines that such factors, as well as other matters set forth herein, weigh in favor of a finding of harmlessness. The interest of justice demanded revelation of the true import and significance of the microscopic slides. It is true that the attorney fees and costs incurred after March 3, 1999, could have been avoided if the slides had been provided by that date, or if plaintiff or defendants by use of the discovery process had established at an earlier date that the slides showed evidence of an AFE. It does not follow, however, that defendants—who did not commit medical malpractice— should have to cover those fees and costs.

Under all of the circumstances presented in this case, including lack of willfulness or bad faith by defendants and plaintiff's knowledge and failure to pursue production and facts concerning the slides, the court rules that defendants' failure to pro-

---

**6.** In the Advisory Committee Notes to the 1993 amendments, it is stated that the substantial justification and harmless violation provision was "necessary to avoid unduly harsh penalties in a variety of situations: *e.g.,* the inadvertent omission ... of a potential witness *known to all parties." See,* Fed. R.Civ.P. 37 advisory committee's note (emphasis added).

vide them to plaintiff was harmless within the meaning of Rule 26(a)(1).

Based upon the foregoing, this court declines to impose the sanction under Rule 37 of awarding attorneys fees for failure to provide by March 3, 1999, the microscopic slides with other disclosures required by Rule 26(a)(1). Rather, the court exercises its discretion and rules that each party should bear the burden of paying their own expenses and attorneys fees. Accordingly, this court DENIES Plaintiff's Motion for Attorneys' Fees and Costs, and denies all other pending motions and matters, all of which are subsumed by this ruling.

It is SO ORDERED.