**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 5 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

HAILE HIRPA, individually and as
the natural parent and guardian of
DURETTI HIRPA, MATTI HIRPA,
and MITIKE HAILE HIRPA, minors,

        Plaintiff - Appellant,

v.

IHC HOSPITALS, INC., d/b/a Logan
Regional Hospital,

        Defendant - Appellee.

No. 01-4166
D.C. No. 1:90-CV-86-G
(D. Utah)

---

**ORDER AND JUDGMENT** *

---

Before **O'BRIEN** and **PORFILIO**, Circuit Judges, and **KANE**,** Senior District
Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*     The Honorable John L. Kane, Senior District Judge, United States District
Court for the District of Colorado, sitting by designation.

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On June 15, 1989, plaintiff's wife, Yeshi Wordoffa, died at Logan Regional Hospital in Logan, Utah, after going into cardiac arrest following the birth of her third child. Plaintiff subsequently filed a medical malpractice action in the United States District Court for the District of Utah against defendant IHC Hospitals, Inc., dba Logan Regional Hospital (Hospital), and defendant Merrill C. Daines, M.D., an employee of the Hospital and one of the attending physicians at the time of Mrs. Wordoffa's death. [1] The Hospital is the only remaining defendant in this action, and this appeal involves only the order entered by the district court on July 13, 2001, denying plaintiff's motion for an award of attorney's fees and costs under Fed. R. Civ. P. 37(c)(1). We hold that the district court did not abuse its discretion in denying plaintiff's motion under Rule 37(c)(1), and we therefore affirm the denial of plaintiff's request for attorney's fees and costs.

I.

An autopsy was performed on Mrs. Wordoffa by Dr. David Perkins, an independent pathologist on the medical staff at the Hospital. As part of the

---

[1] Plaintiff also named three additional defendants in her complaint, but the claims against the additional defendants were dismissed prior to the events underlying this appeal.

autopsy, Dr. Perkins prepared and reviewed microscopic slides containing tissue samples from various bodily organs. Based on the autopsy examination, Dr. Perkins concluded that the cause of Mrs. Wordoffa's death was an acute cardiac tamponade, and he prepared a final autopsy report in which he set forth his "microscopic diagnoses" based on his examination of the slides and a summary of his findings pertaining to the cause of death. *See* Aplt. App., Vol. III at R1065.

In September 1990, plaintiff filed his medical malpractice complaint, alleging that defendants were negligent in failing to provide proper medical care to Mrs. Wordoffa. Plaintiff's theory of liability was based on Dr. Perkins' finding that the cause of Mrs. Wordoffa's death was an acute cardiac tamponade, and plaintiff filed suit against defendants based solely on the findings in Dr. Perkins' autopsy report. As plaintiff stated in the proceedings before the district court, "[t]hroughout the entire ten-year course of this litigation, until two weeks before trial, Plaintiff had based his entire case on the autopsy report of [the Hospital's] pathologist, Dr. Perkins, who had concluded that Ms. Wordoffa died of an acute cardiac tamponade rather than an amniotic fluid embolism." Aplt. App., Vol. I at R0270. In contrast, defendants claimed that the cardiac arrest experienced by Mrs. Wordoffa was caused by an amniotic fluid embolism, and not an acute

cardiac tamponade, and that this was a condition they could neither foresee ahead of time nor treat once it manifested itself.

In September 1990, March 1991, and August 1993, plaintiff served three separate sets of document requests on the Hospital under Rule 34. However, none of the requests sought the autopsy slides prepared by Dr. Perkins. Between 1990 and 1994, plaintiff also took a number of depositions, including the deposition of Dr. Perkins in 1991 and the depositions of two of Dr. Daines' medical experts, Dr. Robert Wray and Dr. Gary Hankins, in 1994. Although all three of these doctors specifically referred to the autopsy slides during their deposition testimony, plaintiff never requested, either formally or informally, that the Hospital produce the autopsy slides. In addition, because the mandatory initial disclosure requirement under Rule 26(a)(1) did not come into effect until December 1, 1993, the district court did not require the parties to make any voluntary disclosures during this initial phase of the litigation.

In October 1994, following the completion of all discovery, the district court granted defendants' motions for summary judgment based on Utah's Good Samaritan Act, and the district court entered summary judgment in favor of the Hospital and Dr. Daines in December 1994. Plaintiff then appealed the entry of summary judgment to this court, and this court certified two questions under Utah's Good Samaritan Act to the Utah Supreme Court. Following the Utah

Supreme Court's determination of the certified questions, this court remanded the case back to the district court, and, in January 1999, the district court denied defendants' renewed motions for summary judgment. Thereafter, the district court directed the parties to exchange initial disclosures under Rule 26(a)(1) by March 3, 1999; the court ordered the parties to complete any additional discovery regarding liability issues by April 24, 1999; and the court set the case for a seven-day jury trial commencing on October 6, 1999.

On March 1, 1999, counsel for the Hospital forwarded a letter to counsel for plaintiff in which he stated as follows:

> The Litigation Management Plan and Preliminary Pretrial Order requires that on or before March 3, 1999 the parties serve upon the others the information required by Rule 26(a)(1) of the Federal Rules of Civil Procedure.
>
> Having reviewed that provision of the rules and discovery previously concluded, I am not aware of any information that has not already been disclosed and provided by the Hospital defendant. If you believe there is anything further I should look into, please let me know.

Letter from B. Lloyd Poelman to plaintiff's counsel dated March 1, 1999 (copy attached to appellee's opening brief). Similarly, in their Rule 26 disclosure statement dated March 2, 1999, counsel for Dr. Daines informed plaintiff that "[a]ll relevant documents, including medical records, have already been produced." Aplt.'s App., Vol. I at R0097. It is undisputed that plaintiff's counsel never objected to defendants' disclosures. To the contrary, in their initial Rule

26(a)(1) disclosures dated March 3, 1999, plaintiff's counsel took a virtually identical approach as they only generically identified "[m]edical records for Yeshi Wordoffa," *id.* at R0105, and the only specific medical record identified by plaintiff's counsel was Dr. Perkins' autopsy report, which was referred to as the "Pathology Report," *id.*

In August 1999, after consulting with one of Dr. Daines' medical experts in preparation for trial, counsel for Dr. Daines contacted the Hospital and inquired whether any of the autopsy slides were available for review. Although counsel for Dr. Daines was initially informed that the slides had been destroyed in accordance with the Hospital's records retention policy, a representative of the Hospital subsequently located the slides in September 1999 at an off-site storage facility. Thereafter, the slides were examined by a number of medical experts, including Dr. Perkins, and it was confirmed to the satisfaction of all the parties to the litigation that the slides showed unequivocally that Mrs. Wordoffa's cardiac arrest was caused by an amniotic fluid embolism, and not by an acute cardiac tamponade as diagnosed by Dr. Perkins, and that defendants were therefore not liable in any respect for her death. As a result, after failing to convince the district court to exclude the slides from the trial of the case under Rule 37(c)(1), plaintiff voluntarily dismissed his claims against Dr. Daines.

However, plaintiff refused to dismiss his claims against the Hospital. Instead, plaintiff filed a motion under Rule 37(c)(1) seeking sanctions against the Hospital for its failure to disclose in its Rule 26(a)(1) disclosures that the slides were in its possession. As a sanction, plaintiff requested that the district court order the Hospital to pay for the attorney's fees and costs he had incurred since March 3, 1999 when the Hospital's disclosures were due. Following extensive briefing and oral argument on plaintiff's motion, the district court denied plaintiff's request for an award of attorney's fees and costs under Rule 37(c)(1), and the court dismissed plaintiff's claims against the Hospital.

II.

The version of Rule 26(a) in effect in March 1999 provided as follows:

(1) *Initial Disclosures*. Except to the extent otherwise stipulated or directed by order or local rule, a party shall, without waiting a discovery request, provide to the other parties:

. . . .

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings.

Fed. R. Civ. P. 26(a)(1)(B) (1993).

As plaintiff has pointed out, the district court mistakenly relied on the version of Rule 26(a)(1)(B) that subsequently went into effect on December 1,

2000. However, the district court's error in this regard is not material to our analysis as we will assume that the Hospital violated the 1999 version of the rule when it failed to disclose that the slides were in its possession. Our analysis will focus exclusively on whether the district court abused its discretion in determining that the Hospital met its burden of demonstrating, under Rule 37(c)(1), that the failure to disclose the existence of the autopsy slides was substantially justified and harmless.

Rule 37(c) provides as follows:

(1) A party that *without substantial justification* fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, *unless such failure is harmless*, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1) (emphasis added).

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quotation omitted). As a result, we determine on appeal only whether the district court abused its discretion, *id.*, and "we may not . . . substitute our own judgment

for that of the trial court," *Nalder v. West Park Hosp.*, 254 F.3d 1168, 1174 (10th Cir. 2001) (quotation omitted). In addition, while "[w]e must carefully scrutinize the district court's exercise of its discretion[,] . . . [a]n abuse of discretion will be found only where the trial court makes an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Id.* (quotations omitted).

In construing Rule 37(c)(1), we have also held that:

> [a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply*, 170 F.3d at 993.

Plaintiff has conceded that the Hospital did not act willfully or in bad faith in failing to disclose in its initial disclosures that the autopsy slides were in its possession. Moreover, although there is no question that the unexpected production and subsequent analysis of the slides irreversibly harmed plaintiff by rendering him unable to proceed to trial, and that there are thus significant issues with respect to the first three factors, we hold that the district court did not abuse its discretion in concluding that there was insufficient prejudice or surprise to justify an award of attorney's fees and costs to plaintiff.

First, it is undisputed that, based on Dr. Perkins' autopsy report, plaintiff

knew, even before he filed suit against defendants, that Dr. Perkins had prepared

and examined microscopic slides during the autopsy, and that Dr. Perkins'

examination of the slides was central to his diagnosis of the cause of

Mrs. Wordoffa's death.  Further, plaintiff's counsel took Dr. Perkins' deposition

in 1991 and Dr. Perkins specifically testified about slides, as did Dr. Wray and

Dr. Hankins at their depositions in 1994.  Nonetheless, plaintiff never requested,

either formally or informally, that the Hospital produce the slides.  Instead, as

forcefully stated by the district court:

> Armed with the knowledge that the slides were the very foundation
> stones of Dr. Perkins' opinion that [amniotic fluid embolus] was not
> the cause of death, and that they evidenced the existence of cardiac
> tamponade, plaintiff apparently did not believe he needed the slides
> and did not ever formally request production of the slides, or attempt
> by subpoena or formal discovery to obtain them. Moreover, plaintiff
> did not require documentation of the whereabouts of the slides, or
> require testimony or proof concerning alleged destruction of the
> slides, or inquire why there were no laboratory samples to evidence
> testing for [amniotic fluid embolus] . . . .  *Manifestly, before counsel
> for defendant Dr. Daines stumbled on the evidentiary significance of
> the slides, plaintiff had made no serious or lawyer-like attempt to
> obtain them from the [Hospital] or to document the facts about their
> alleged non existence or destruction*    .

*Hirpa v. IHC Hosp., Inc.*   , 149 F. Supp.2d 1289, 1295 (D. Utah 2001)

(emphasis added).

Second, we reject plaintiff's contention that the Hospital's failure to

disclose the existence of the slides in March 1999 was unjustified and harmful

-10-

because "[f]rom the earliest stages of this case, [plaintiff's] counsel understood and believed that the Slides had been misplaced or destroyed by [the Hospital]." Opening Br. at 13. Indeed, while plaintiff's counsel may have in fact mistakenly believed in March 1999 that the slides were no longer available for inspection, there is no evidence in the record indicating that the Hospital or its attorneys were in any way responsible for this mistaken belief. To the contrary, the only relevant evidence in the record shows that, following the deposition of Dr. Hankins in 1994, plaintiff's former counsel, Norman Younker, asked counsel for Dr. Daines if the "autopsy examination had included pathology testing for amniotic fluid embolism." Aplt. App., Vol. II at R0591. According to Mr. Younker, counsel for Dr. Daines responded that "no pathology slides existed because the hospital's pathologist had failed to sample or test for the presence of amniotic fluid embolism." *Id.* As found by the district court, "[t]he statement by Mr. Younker sets forth nothing about destruction of slides, and simply reflects the understanding of the lawyers that no pathology slides (other than the slides referenced by Dr. Perkins and Dr. Hankins) were ever in existence concerning a sampling for [amniotic fluid embolism]." *Hirpa,* 149 F. Supp.2d at 1292 n.3.

Finally, the requirements of Rule 26(a)(1) must be analyzed in the specific context of this case in March 1999. At that time, the parties had already engaged in four years of extensive discovery, which included three separate sets of

document requests from plaintiff to the Hospital. In addition, each of the parties, including plaintiff, simply prepared generic document disclosures, incorporating generally the documents that had already been produced in the case. Given this context, the dispute in this case is more properly analyzed under Rule 26(e)(1). Rule 26(e)(1) governs supplementation of prior disclosures, and it provides that a party is required to supplement a prior disclosure only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Here, there is no dispute that the existence of the autopsy slides was made known to plaintiff during the discovery process, and thus the burden was on plaintiff to affirmatively request that the Hospital produce the slides.

The order of the district court denying plaintiff's motion for an award of attorney's fees and costs is AFFIRMED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge