**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 16, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DOCTOR JOHN'S, a Utah
corporation; JOHN HALTOM,

    Plaintiffs-Counter-Defendants -
Appellants,

v.

G. BLAKE WAHLEN, in his official
capacity as City Manager; TAMMY
NELSON, in her official capacity as
Development Services Manager,

    Defendants - Appellees.

ROY CITY,

    Defendant-Counter-Claimant -
Appellee.

No. 07-4131

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 1:03-CV-81-PGC)**

---

W. Andrew McCullough of McCullough & Associates, L.L.C., Midvale, Utah, for
Plaintiffs - Appellants.

Robert Keller (Jody K. Burnett of Williams & Hunt, on the brief) Salt Lake City,
Utah, for Defendants - Appellees.

---

Before **KELLY**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

**KELLY**, Circuit Judge.

Plaintiff-Appellant Doctor John's, Inc. appeals the grant of summary judgment in favor of the Defendant-Appellee City of Roy ("City") on its claim that the City's ordinance regulating sexually oriented businesses violates the First Amendment. The district court previously granted summary judgment to the City on all grounds, but we remanded for the district court to clarify what evidence it considered under the burden-shifting scheme of City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002) (plurality). See Doctor John's, Inc. v. City of Roy, 465 F.3d 1150, 1169 (10th Cir. 2006) (Doctor John's II). On remand, the district court concluded that Doctor John's evidence was insufficient to meet its burden at Alameda Books Step 2 and granted summary judgment again to the City. Doctor John's, Inc. v. City of Roy, No. 03-081, 2007 WL 1302757, *12 (D. Utah May 2, 2007) (Doctor John's III) (unpublished). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

Doctor John's operates stores that sell, among other things, a range of "adult" products. Plaintiff-Appellant John Haltom is a major shareholder in Doctor John's parent company and is involved in the operation of Doctor John's Roy City store. Soon after Doctor John's came to town, the City of Roy passed an ordinance requiring all "sexually oriented businesses" and their employees to

follow various regulations to prevent the deleterious effects of those businesses. The ordinance sets forth findings supporting the need for the regulations based on case law, Congressional testimony, research papers, and various studies from other cities. Aplt. App. at 21–25. The details of the ordinance are not particularly relevant to this appeal, but briefly, the ordinance requires that these businesses and their employees obtain licenses, that they pay an application and annual renewal fees, and that they limit their operating hours to 10:00 am to 11:00 pm. Once an application is filed, a temporary license is immediately issued, and a permanent license will follow except under certain circumstances including, for example, when an employee has convictions for specified crimes, the business has refused inspection of the premises within the last year, or the business has provided incomplete or false information.

Doctor John's refused to submit an application and filed a lawsuit pursuant to 42 U.S.C. § 1983 alleging the ordinance was an unconstitutional restriction on speech. The City counterclaimed seeking a court order requiring Doctor John's to comply with the ordinance. On cross-motions for summary judgment, the district court granted summary judgment to the City on all federal claims and declined to exercise jurisdiction over the state law claims. Doctor John's, Inc. v. City of Roy, 333 F. Supp. 2d 1168 (D. Utah 2004) (Doctor John's I). On appeal, we affirmed summary judgment for the City on all claims except the First Amendment claim, remanding because we were uncertain whether the district

court considered articles Doctor John's submitted in its district court pleadings to cast doubt on the City's rationale as required by Alameda Books Step 2. Doctor John's II, 465 F.3d at 1169. We remanded reasoning that because the parties' evidence is essential to determining whether an ordinance is narrowly tailored to serve a municipality's interest in preventing secondary effects, it was necessary to allow the district court to thoroughly review Doctor John's evidence since the evidence was not mentioned in the district court's order. Id.

On remand, the district court first considered whether Doctor John's failure to disclose the articles as discoverable information or supplement previous disclosures was harmless under Fed. R. Civ. P. 26(a). Doctor John's III, 2007 WL 1302757, at *4. The district court concluded the untimeliness was not harmless and the materials were inadmissible as a sanction under Rule 37(c)(1). Id. Then the district court proceeded to analyze whether the articles cast doubt on the City's rationale for its ordinance, assuming the articles were admissible. The district court noted that despite its briefing order requesting the parties to explain how their studies supported or cast doubt on the ordinance, Doctor John's only responded to the City's Rule 26 and hearsay arguments and argued issues foreclosed by Doctor John's II. 2007 WL 1302757, at *5. Despite this failure, the district court still reviewed arguments in Doctor John's initial summary judgment pleadings from 2004 and concluded that the materials Doctor John's submitted had failed to cast doubt on the ordinance's rationale. Id.

- 4 -

Ordinances targeting the secondary effects of adult businesses are analyzed as time, place, and manner regulations. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46 (1986). These ordinances will be upheld if they are "justified without reference to the content of the regulated speech," id. at 48, narrowly tailored to serve a significant governmental interest, and leave open reasonable alternative avenues of communication. Z.J. Gifts D-2, L.L.C. v. City of Aurora, 136 F.3d 683, 688 (10th Cir. 1998). In Doctor John's II, we previously determined that the ordinance is justified without reference to the content of the regulated speech and noted that Doctor John's did not argue that the ordinance fails to leave open alternative avenues of communication. 465 F.3d at 1164. Thus, the only issue left to consider is whether there is any issue of material fact precluding summary judgment with regard to whether the ordinance is narrowly tailored to serve a significant government interest. We review this issue de novo. Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1118 (10th Cir. 2008).

The City bears the burden of providing evidence of secondary effects to justify its ordinance. Alameda Books, 535 U.S. at 437 (plurality). A municipality may rely on any evidence that is "reasonably believed to be relevant to the problem that the city addresses." Renton, 475 U.S. at 51–52. "This is not to say that a municipality can get away with shoddy data or reasoning. The

municipality's evidence must fairly support the municipality's rationale for its ordinance." Alameda Books, 535 U.S. at 438. The burden then shifts to the plaintiff to "cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings." Id. at 438–39. If the plaintiff succeeds in casting doubt on the municipality's rationale, "the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." Id. at 439.

In Doctor John's II, we held that the City had satisfied its burden under Step 1 of Alameda Books, rejecting Doctor John's contention that the ordinance is not narrowly tailored because it lacks specific evidence concerning off-site adult businesses. 465 F.3d at 1166–68. We reasoned that a municipality need not initially produce specific evidence regarding the precise type of business, but a plaintiff may challenge a municipality's rationale by producing "evidence that its type of adult business (e.g., 'off-site') is relevantly different than those types of businesses analyzed in the studies supporting the ordinance (e.g., 'on-site')." Id. at 1168. Because Doctor John's had produced no evidence regarding off-site adult businesses, that argument failed to cast doubt on the City's rationale. Id. We ultimately remanded because the record was not clear whether the district court considered the articles Doctor John's submitted to cast doubt on the City's rationale. Therefore, the only surviving issue on appeal is whether the evidence

- 6 -

Doctor John's submitted to the district court casts doubt on the City's rationale for its ordinance at <u>Alameda Books</u> Step 2.

I.     <u>Rule 26(a) violation and Rule 37 sanctions.</u> The district court concluded that Doctor John's failure to disclose the articles as discoverable information or supplement previous disclosures was not harmless under Fed. R. Civ. P. 26(a) warranting sanctions under Rule 37(c)(1). <u>Doctor John's III,</u> 2007 WL 1302757, at *4. We review a district court's determination whether a Rule 26(a) violation is justified or harmless for abuse of discretion. <u>Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.</u>, 170 F.3d 985, 993 (10th Cir. 1999).

Fed. R. Civ. P. 26(a) requires disclosure of the names of all individuals and information that the party may use to support its claims or defenses, including expert witnesses and their opinions. In addition, Rule 26(e) requires a party to timely supplement all disclosures made under Rule 26(a). Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless."

Doctor John's attached the two articles in dispute to a reply memorandum in support of its motion for summary judgment and in response to the City's motion for summary judgment filed July 20, 2004. The district court concluded that the failure to disclose the articles prejudiced the City because it effectively

had no opportunity to respond. Neither the court of appeals nor the district court mentioned that the articles were attached to a dual-purpose pleading, Doctor John's reply memorandum in support of its motion for summary judgment and its response to the City's motion for summary judgment, Aplt. App. at 171. Doctor John's argues that the City waived its objection to strike its articles by not objecting prior to remand when it had an opportunity to do so in its response to Doctor John's motion for summary judgment filed July 26, 2004.

Ordinarily, a litigant's failure to specifically object to specific exhibits not disclosed under Rule 26(a) may well waive that objection. But here, we remanded specifically for the district court to conduct a thorough analysis of the evidence and clarify which evidence it relied upon. We noted that the district court may have refused to consider the evidence as untimely, Doctor John's II, 465 F.3d at 1169, so it was proper on remand for the City to address that possibility and object to the consideration of those articles. Clearly, the district court rejected the alternative of reopening discovery (the City suggested it as an alternative to striking), and opted instead to examine the evidence already submitted by the parties. We cannot say that the district court abused its broad discretion in its management of discovery and scheduling matters. See King v. PA Consulting Group, Inc., 485 F.3d 577, 591 (10th Cir. 2007). Similarly, the district court's view that the articles were factual instead of legal, as Doctor John's contends, also was not an abuse of discretion given the nature of the

secondary effects inquiry.  Although we conclude that the district court did not abuse its discretion in striking the articles, even if the articles were considered as evidence under the Alameda Books framework, Doctor John's has failed to cast doubt on the City's rationale that its ordinance is narrowly tailored to prevent the secondary effects of adult businesses.

II.    Whether Doctor John's articles cast doubt.  Doctor John's may cast direct doubt on the City's rationale for its ordinance "either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings."  Alameda Books, 535 U.S. at 438–39.  Doctor John's submitted six exhibits to the district court as evidence in support of its arguments:  an unsworn affidavit of Bruce McLaughlin, a book chapter,[1] two summaries of studies concluding adult businesses produce secondary effects,[2] the Keetch article,[3] and the Linz article.[4]  Even though Doctor

---

[1]  Eric D. Kelly & Connie Cooper, Everything You Always Wanted to Know about Regulating Sex Businesses, Planning Advisory Serv. Report No. 495/496, American Planning Association, ch. 9 (Dec. 2000) (Aplt. App. at 115).

[2]  Louis F. Comus III, Summaries of Key Reports Concerning the Negative Secondary Effects of Sexually Oriented Businesses (Aplt. App. at 180); Adult Studies as Summarized by Louis Comus (Aplt. App. at 200).

[3]  Von G. Keetch & Matthew K. Richards, The Need For Legislation to Enshrine Free Exercise in the Land Use Context, 32 U.C. Davis L. Rev. 725 (1999) (Aplt. App. at 206).

[4]  Bryant Paul, Daniel Linz, & Bradley J. Shafer, Government Regulation of "Adult" Businesses through Zoning and Anti-Nudity Ordinances:  Debunking the Legal Myth of Negative Secondary Effects, 6 Comm. L. & Pol'y 355 (2001) (Aplt. App. at 221).

John's appears to concede in its brief that only two of those exhibits are at issue on appeal, see Aplt. Br. at 13–14 ("The exhibits at issue here were attached as Exhibits" to a reply memorandum, referring to the Keetch and Linz articles.), we will briefly address the first four exhibits as well.

First, the district court granted the City's motion to strike Mr. McLaughlin's affidavit, Aplt. App. at 535, and Doctor John's has not appealed that decision. Second, the book chapter, mentioned but not discussed in Doctor John's brief on appeal, appears to be addressed to city planning officials regulating adult businesses and states that these businesses produce negative secondary effects. Id. at 120. Although the chapter does distinguish between on-site and off-site sexually oriented businesses, it simply discusses broad regulatory issues associated with each type and only summarily describes the secondary effects of each type without providing any evidence supporting the distinction. Id. at 120–23. Third, the two summaries by Mr. Comus are not mentioned in Doctor John's brief on appeal. The summaries simply list a number of studies finding negative secondary effects from adult businesses and do not appear to support Doctor John's argument. See id. at 180.

Next, the Keetch article argues that "generally applicable" land use regulations approved of by Employment Division v. Smith, 494 U.S. 872 (1990), allow municipalities to impinge on the free exercise of religion by zoning out churches. See Keetch & Richards, supra, at 725–26. Doctor John's argues that

the premise of the article is that municipalities suppress the disfavored speech of unpopular churches, like adult businesses, under the guise of regulating the secondary effects they produce. The Keetch article fails to cast doubt on the City's rationale because it does not discuss the specific secondary effects municipalities complain churches cause, but only argues that the land use regulations are motivated by animus towards minority religions. Thus, the article is irrelevant to an analysis of secondary effects.

Doctor John's closest evidence is the Linz article. At first glance, the article does appear to cast doubt on secondary effects studies generally in stating that its authors reviewed 107 relevant studies. However, the article only analyzes the 10 most frequently cited studies by municipalities, and the City of Roy only relies on 4 of those 10 studies. Consequently, it is difficult to see how the article casts doubt on the other 14 studies relied on by the City, let alone the other 7 reports and the many cases cited by the ordinance. Aplt. App. at 22.

The article's main premise is also problematic because it argues that secondary effects studies relied on by municipalities should meet the requirements of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). However, the Supreme Court has "flatly rejected [the] idea" of requiring cities to rely on empirical analysis. City of Erie v. Pap's A.M., 529 U.S. 277, 300 (2000) (citing Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 394 (2000)). In fact, among the specific empirical studies that the Supreme Court rejected in City of

Erie, were Dr. Linz's studies cited by an amicus curiae, Brief for The First Amendment Lawyers Association as Amicus Curiae Supporting Respondent, City of Erie v. Pap's A.M., 529 U.S. 277 (2000) (No. 98-1161), 1999 WL 805047, and relied on by the dissent, Erie, 529 U.S. at 315 n.3 (Souter, J., concurring in part and dissenting in part). See id. at 300. This amicus brief principally relies on, and attaches in its appendix, a paper by Dr. Linz which appears to be merely an earlier draft of the article later published in 2001 and submitted to the district court. The paper analyzes the same ten secondary effects studies, contains strikingly similar tabular data, and utilizes the same methodology, i.e., analysis under the Daubert standards, as the article later published in Communication Law and Policy in 2001. See Amicus Curiae Brief, Erie, 529 U.S. 277 (No. 98-1161), 1999 WL 805047, app. at A.1.

Even Doctor John's concedes that "courts continue to rule that studies of secondary effects . . . do not have to meet the standard of Daubert." Aplt. Br. at 24. For this reason, Doctor John's cites "judicial authority in which other courts ha[ve] found these same studies" cast doubt on the studies relied on by the City. Id. However, in light of the Supreme Court's rejection of this specific analysis by Dr. Linz, we see little need to continue. Nevertheless, the cases cited by Doctor John's are distinguishable because none relied solely on the Linz article to cast doubt on a municipality's rationale for an ordinance. For example, in DiMa Corp. v. High Forest Township, No. 02-3800, 2003 WL 21909571 (D. Minn. Aug. 7,

2003), a plaintiff cast doubt on a township's rationale by submitting an expert report and three studies directly addressing adult businesses offering only off-site materials in addition to submitting the Linz article.  Id. at *3.  The township only relied on five secondary effects studies, four of which the Linz article directly analyzed.  Id.

Doctor John's also relies on Abilene Retail No. 30, Inc. v. Board of Commissioners of Dickson County, Kansas, 492 F.3d 1164 (10th Cir. 2007), where the plaintiff submitted five studies showing sexually oriented businesses do not cause negative secondary effects, called Dr. Linz as an expert who reviewed every study relied on by the municipality, and submitted an article by Dr. Linz and others challenging the validity of various studies.  Id. at 1187 (Ebel, J., concurring).[5]  It is not clear from the opinion whether this article by Dr. Linz is the same one that Doctor John's submitted to the district court, but even if it was, the plaintiff in Abilene Retail relied on substantially more than just the Linz article to cast doubt on the county's rationale.  Similarly, the only other courts to conclude that the Linz article was sufficient to cast doubt on a city's rationale did so when the article was submitted with other evidence, such as expert affidavits, that specifically contradicted nearly all of the evidence supporting the ordinances.

---

[5] In Abilene, the panel produced two opinions for the court, both receiving three votes.  One opinion held that the County failed to carry its burden at Alameda Books Step 1; the other held that the County failed carry its burden at Alameda Books Step 3.  465 F.3d at 1175–76, 1181.

See 22nd Ave. Station, Inc. v. City of Minneapolis, 429 F. Supp. 2d 1144, 1150–51 (D. Minn. 2006); Giovani Carandola, Ltd. v. Fox, 396 F. Supp. 2d 630, 641–47 (M.D.N.C. 2005), rev'd in part, 470 F.3d 1074 (4th Cir. 2006). Other courts have rejected Dr. Linz's argument, even when submitted with additional evidence, as insufficient to cast doubt on a city's rationale for its ordinance. See G.M. Enterprises v. Town of St. Joseph, 350 F.3d 631, 635–36, 640 (7th Cir. 2003); SOB, Inc. v. County of Benton, 317 F.3d 856, 863 (8th Cir. 2003); Fantasyland Video, Inc. v. County of San Diego, 373 F. Supp. 2d 1094, 1108–10 (S.D. Cal. 2005), aff'd, 505 F.3d 996 (9th Cir. 2007); Nite Moves Entm't, Inc. v. City of Boise, 153 F. Supp. 2d 1198, 1208–09 (D. Idaho 2001). These courts rejected Dr. Linz's approach because of its reliance on Daubert and because requiring municipalities to present empirical data to support an ordinance "would go too far in undermining our settled position that municipalities must be given a reasonable opportunity to experiment with solutions to address the secondary effects of protected speech." Alameda Books, 535 U.S. at 439 (quotations omitted).

Doctor John's also cites a number of cases relying on Encore Videos, Inc. v. City of San Antonio, 330 F.3d 288 (5th Cir. 2003), arguing that its business only sells merchandise to be used off-site. See Aplt. Br. at 31. However, the Tenth Circuit has explicitly rejected the reasoning of Encore Videos that the on-site/off-site distinction is relevant at Step 1 of Alameda Books. Doctor John's II,

465 F.3d at 1167–68; see Z.J. Gifts, 136 F.3d at 687–88.  We acknowledge that the distinction between on-site and off-site adult businesses may be relevant under Step 2 of Alameda Books.  Doctor John's II, 465 F.3d at 1168.  But Doctor John's has produced absolutely no evidence relevant to this distinction.  See id.; see also Abilene Retail, 492 F.3d at 1186 n.7 (Ebel, J., concurring).  Finally, the Linz article is insufficient because it does not address many of the stated objectives the ordinance is intended to accomplish, for example, the prevention of distribution of harmful materials to minors.  Aplt. App. at 24, ¶ 21.  Prior to the enactment of the ordinance, the City's police chief investigated a similar business in another Utah municipality.  Aplt. App. at 481.  This reinforced concerns about the distribution of harmful, sexually-oriented material to minors, notwithstanding a policy against admitting minors.  Such evidence provides strong support for the ordinance and stands unchallenged.[6]  Aplt. App. at 481-83; see also id. at 486-87 (parental complaints about videos sold to minors).

We conclude that the district court did not abuse its discretion in striking the Keetch and Linz articles as a sanction under Rule 37(c)(1) for violation of Fed. R. Civ. P. 26(a).  We also conclude that, even if considered, Doctor John's has failed to produce evidence sufficient to cast doubt on the evidence supporting

---

[6] The past criminal history of the store manager also provides strong support for the ordinance.  See Doctor John's, 465 F.3d at 1170, n.27, 1171 (discussing propensity for recidivism); State v. Haltom, No. 20070498-CA, 2008 WL 207861, at *1 (Utah. Ct. App. Jan. 25, 2008) (per curiam).

the City's rationale that its ordinance is narrowly tailored to serve a significant government interest.

AFFIRMED.