FILED
United States Court of Appeals
Tenth Circuit

May 27, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PENNI L. NEIBERGER; JOHN E.
NEIBERGER,

        Plaintiffs - Appellants,

    v.

FED EX GROUND PACKAGE
SYSTEM, INC.; KEVIN T.
KILLMAN; DENNIS CONLEY,

        Defendants - Appellees.

No. 07-1504

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:04-cv-00230-WDM-MEH)**

---

Michael W. Baty, The Baty Law Firm, P.C., Durango Colorado, and Randolph H.
Phillips, Alpharetta, Georgia, for Plaintiffs - Appellants.

Michael Brice Sullivan (A. Peter Gregory, with him on the brief), of Harris,
Karstaedt, Jamison & Powers, P.C., Englewood, Colorado, for Defendants-
Appellees.

---

Before **HARTZ**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Penni L. Neiberger was a passenger in a pickup truck driven by her husband, John E. Neiberger, when she was injured in a motor-vehicle collision in Colorado on February 19, 2003. The other vehicle was a delivery van driven by defendant Kevin Killman and owned by defendant Dennis Conley. The van was carrying cargo for defendant Fedex Ground Package System, Inc. Mrs. Neiberger appeals an adverse judgment in the United States District Court for the District of Colorado.[1] Under Colorado's no-fault statute she could obtain relief through a tort suit only if her injuries were sufficiently severe. The jury found that her injuries did not qualify.

On appeal Mrs. Neiberger challenges several rulings by the district court that may have led to the jury's finding. Two challenges relate to a defense expert witness who opined that the failure of Mrs. Neiberger's spine to heal after her preaccident back surgery was not the result of the accident but was probably caused by her smoking. Mrs. Neiberger contends that the expert should not have been permitted to testify because (1) the expert opinion did not satisfy the requirements of Federal Rule of Evidence 702 and (2) Defendants did not adequately disclose during discovery the basis for the expert's opinion. Mrs. Neiberger also challenges the district court's refusal to allow two of her

---

[1] Mr. Neiberger, who brought a claim for loss of consortium, is also an appellant. But no arguments specific to him are raised in the appellate briefs, so we conclude that he concedes, as he must, that his claim is dependent on his wife's. *See Welch v. George*, 19 P.3d 675, 677–78 (Colo. 2000). For convenience, we will not refer to him any further in the opinion.

expert witnesses on damages to testify regarding her medical expenses. Finally, she challenges the court's refusal to allow her to call an expert witness regarding the cause of the accident. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    BACKGROUND

The details of the accident are not relevant to our disposition of this appeal. We therefore summarize at this point only the Colorado statute that barred Mrs. Neiberger's tort claim and the evidence relating to the requirements of the statute. We will provide further detail in our later discussions of the specific issues raised on appeal.

Under the Colorado Auto Accident Reparations Act, Colorado Revised Statute § 10-4-701 *et seq.* (repealed July 1, 2003), which governed Mrs. Neiberger's claim, a victim of a motor-vehicle accident could recover damages in a tort lawsuit only if she proved that the accident had caused at least one of several specified losses. *See* Colo. Rev. Stat. § 10-4-714 (repealed July 1, 2003); *Donelson v. Fritz*, 70 P.3d 539, 545 (Colo. Ct. App. 2002). Accordingly, the district court gave the jury the following "threshold" instruction (which is not challenged on appeal):

> Before you consider the question of either negligence or damage, you must first find at least one of the following was caused by the accident:

The Plaintiff, Penni Neiberger, sustained one or more of the following:

    a.     permanent disability;
    b.     permanent disfigurement;
    c.     the reasonable value of reasonably needed medical or rehabilitation services, alone or in combination, have [sic] or will exceed $2,500.00; or
    d.     loss of earnings or earning capacity [beyond certain specified amounts].

If you find that none of the above has been proved by a preponderance of the evidence, then you must return your verdict in favor of the Defendants, and your foreperson shall sign Verdict Form 1.

Aplees. App. at 1.

To prove that she had suffered an injury that would enable her to sue in tort, Mrs. Neiberger relied on a claim that the accident had injured her spine. She had suffered from scoliosis, or curvature of the spine, since age 13; and Dr. John Odom, an orthopedic surgeon, had operated on her to correct the defect in March 2002, about a year before the accident. But when Dr. Odom performed additional surgeries after the accident (in August 2003 and February 2005), he noted that her spine had not fused in some locations—that is, she had nonunions of her spine. He testified at trial that the nonunions were caused by the accident.

In addition, to prove that her reasonably necessary medical expenses arising from the accident exceeded $2,500, Mrs. Neiberger testified that she had incurred $184,000 in medical bills "[s]ince the accident." Aplts. App. Vol. 2 at 266. But when she tried to introduce testimony by her economics expert, Thomas Roney,

-4-

regarding her medical expenses, the district court sustained a defense objection on the ground that Mrs. Neiberger had not introduced competent evidence to show that the care for which she was billed $184,000 was reasonably necessary to treat injuries caused by the accident. She contends that the district court similarly refused to admit medical-expense testimony by her occupational-therapy and life-care-planning expert, Doris Shriver.

To counter Dr. Odom's testimony, Defendants presented a deposition of Dr. Peter Weingarten, another orthopedic surgeon, that had been videotaped a week before trial. Dr. Weingarten testified that the nonunions of Mrs. Neiberger's spine probably resulted from her smoking cigarettes, not from the accident.

The jury returned a special verdict that Mrs. Neiberger had not proved any of the losses necessary to pursue a tort claim, and the district court entered judgment for Defendants.

## II.    DISCUSSION

### A.    Dr. Weingarten's Testimony

Mrs. Neiberger contends that the district court erred in allowing Dr. Weingarten to testify because his expert opinion did not satisfy the requirements of Federal Rule of Evidence 702 and because the pretrial report of his opinion, provided by Defendants during discovery, was inadequate disclosure under Federal Rule of Civil Procedure 26(a). We disagree.

On October 10, 2005, Dr. Weingarten examined Mrs. Neiberger. He also reviewed various imaging studies of her spine. In a report provided to Mrs. Neiberger's counsel on October 17, he observed that "immediately subsequent to the motor vehicle accident [there was no] radiographic evidence of loosening or displacement of the hardware [installed by Dr. Odom during her initial surgery]," and concluded that it was "highly unlikely that the motor vehicle accident caused a fracture [of Mrs. Neiberger's spine] without evidence of displacement of the hardware." *Id.* at 121. He also noted that Mrs. Neiberger had told him that she had stopped smoking six months before her first surgery but had then resumed smoking up to half a pack a day for a period of time after the accident. He stated, "Clearly the history of smoking does result [in] an increased incidence of pseudoarthrosis," or nonunion. *Id.*

On November 7 Mrs. Neiberger's counsel deposed Dr. Weingarten for 26 minutes. Dr. Weingarten reiterated his view that the accident had not caused any fracture or nonunion in Mrs. Neiberger's spine. He stated that nonunion is a recognized risk even in nonsmokers but that smoking greatly heightened this risk and that it was a likely cause of the nonunion. Mrs. Neiberger's counsel did not ask questions about the scientific bases for Dr. Weingarten's conclusions.

Defendants deposed Mrs. Neiberger's surgeon, Dr. Odom, two weeks later. They questioned him about five peer-reviewed studies showing that smoking inhibited spinal fusion and about the position statement of the American Academy

-6-

of Orthopedic Surgeons (AAOS) adopting that view. Dr. Odom expressed his substantial agreement with this medical literature and acknowledged that he had repeatedly warned Mrs. Neiberger of the risk of nonunion posed by her smoking. These warnings began early in his care of her. His notes of their March 2002 presurgical conference state that "[h]er greatest risk, of course, is nonunion because she's been a smoker." *Id.* Vol. 1 at 58. He testified that he had explained this risk to Mrs. Neiberger and thought that she understood it. He also said that Mrs. Neiberger had agreed to limit this risk by not smoking for at least a year after her initial surgery and that six months after her second surgery, when Mrs. Neiberger told him that she was smoking half a pack a day, he had "told her that was not good . . . [b]ecause she wouldn't grow bone as well as if she didn't smoke." *Id.* at 67.

On January 24, 2007, one month before trial, Mrs. Neiberger filed a motion in limine to limit Dr. Weingarten's testimony. She argued that Defendants had violated Federal Rule of Civil Procedure 26(a)(2) by failing to disclose the data or methodology underlying his conclusion that her smoking was the cause of her spine's failure to heal. She pointed out that Dr. Weingarten had "performed no smoking specific tests or procedures" on her, *id.* at 29, and had examined her physically for only 15 minutes. She also argued that the failure to provide such data or methodology rendered his opinion inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993). Defendants' response noted the medical literature and Dr. Odom's deposition testimony supporting the view that smoking increases the risk of nonunions.

During trial the district court orally denied the motion in limine. Without specifically stating that Defendants' disclosure was inadequate under Rule 26(a), the court said:

> What we should generally be concerned with is that the opponent has a reasonable opportunity to understand and effectively cross-examine or confront the expert . . . .
>
> [T]he report was dated October of 2005. The deposition was taken, I think, within a month thereafter. . . . [T]he plaintiffs were aware of the opinion and did not seek any further explanation and, as such, I can see no factor . . . that would weigh in favor of the prohibition of the testimony because of disclosure difficulties.
>
> If there was a problem or any question about it, it certainly could have been cured much sooner. But I see no problem.

Aplts. App. Vol. 2 at 175. With regard to the reliability of Dr. Weingarten's opinions under Rule 702 and *Daubert*, the court stated:

> [T]he questions that I have should focus on the reliability and the matters that are listed in Rule 702. And there doesn't seem to be any question but that it's established medical opinion that smoking does harm the union process or is a factor in non-union occurring.
>
> The defendants have articulated that and have provided much data over the time of this litigation and, indeed, there is evidence that—what I've seen, that the surgeon who performed the operation would agree. I see no real reason to qualify or find that this opinion is not reliable or not based upon sufficient facts or data or reliable principle methods.

-8-

*Id.* at 175–76. When asked if he had any questions about the ruling, Mrs. Neiberger's counsel responded that he did not. (Contrary to Mrs. Neiberger's contention on appeal, the court did not base its ruling on the timeliness of the motion in limine.)

### 1. Rule 702 (*Daubert*) Challenge

Mrs. Neiberger contends that the district court erred in ruling that Dr. Weingarten's testimony was admissible under Rule 702. We review de novo the question whether the district court applied the proper legal standard in admitting an expert's testimony; we then review for abuse of discretion its actual application of the standard. *See Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1335 (10th Cir. 2004). "[W]e will not overturn the trial court's ruling on admissibility unless it is arbitrary, capricious, whimsical or manifestly unreasonable or . . . we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Champagne Metals v. Ken-Mac Metals, Inc.,* 458 F.3d 1073, 1079 (10th Cir. 2006) (internal quotation marks omitted).

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles

and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Rule is intended to capture the holdings of the Supreme Court in *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *See* Fed. R. Evid. 702 advisory committee's note (2000 amend.). The trial judge must ensure that proffered expert testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Thus,

> where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline.

*Kumho Tire*, 526 U.S. at 149 (brackets and internal quotation marks omitted).

Dr. Weingarten's trial testimony tracked his Rule 26 report. First, he said that the x rays taken two weeks after the accident did not show any loosening or displacement of the hardware in Mrs. Neiberger's spine. Second, he opined that it was therefore highly unlikely that the collision caused a fracture in her spine. He explained that the hardware "wasn't loosened. It wasn't bent. The spine simply would not have moved. And, consequently, there's no way that this accident caused the spine to fracture or to break." Aplts. App. Vol. 3 at 315. The collision, he concluded, was not the cause of either of the nonunions discovered by Dr. Odom in Mrs. Neiberger's postaccident surgeries. Third, he expressed the view, based on his education, experience, and reading of scientific literature, that

-10-

smoking is a major cause of nonunion. Finally, he concluded that Mrs. Neiberger's smoking was likely the cause of the nonunions.

In her district-court motion in limine, Mrs. Neiberger, although complaining generally about the lack of support for Dr. Weingarten's opinions, addressed specifically only his "connecting [her] smoking and her broken back." *Id.* Vol. 1 at 36. In particular, she raised no concerns about the first two steps in Dr. Weingarten's chain of reasoning—that the accident had not loosened or displaced the orthopedic hardware and that it was therefore highly unlikely to have caused the nonunion. Nor did she raise a concern about those two steps when the district court ruled on the matter during trial. Because the district court was required to rule only with respect to opinions that "are called sufficiently into question," *Kumho Tire*, 526 U.S. at 149, we need address only the reliability of Dr. Weingarten's opinion regarding the causal effect of her smoking.

The district court undoubtedly recognized the proper legal standard under Rule 702; and we hold that the court did not abuse its discretion in applying that standard to admit Dr. Weingarten's testimony. To begin with, the record before the district court included several peer-reviewed articles in medical journals that concluded that smoking greatly increased the risk of nonunions. In addition, a position statement of the AAOS had echoed this view and, perhaps dispositively, Mrs. Neiberger's own expert witness, Dr. Odom, had substantially agreed with the literature, even warning her not to smoke after her surgery. The district court

-11-

could quite reasonably conclude that "there doesn't seem to be any question but that it's established medical opinion that smoking does harm the union process." Aplts. App. Vol. 2 at 175.

The next step in Dr. Weingarten's reasoning was to connect this general proposition to Mrs. Neiberger's condition. There was no dispute that she was a smoker. But Mrs. Neiberger complained that Dr. Weingarten had examined her for only 15 minutes and had "performed no smoking specific tests or procedures" on her. *Id.* Vol. 1 at 29. Dr. Weingarten explained, however, why such a study would be inappropriate, if not impossible:

> I would have to ask her to smoke and not smoke and measure different parameters. That's not the way these studies are ever done. And what the studies involve, typically, is taking a group of patients who are smokers and who are nonsmokers and seeing what the success rate from a given procedure is. . . . It takes a lot of people because you need to compare age ranges, comparable operative procedures, and then the ability to follow people for a long time; and that's already been done.

*Id.* Vol. 3 at 318–19. Dr. Weingarten further explained that one cannot say that

> smoking causes a nonunion because you don't know which patient it's going to cause it in and which one it won't. You . . . can only say that it increases the risk of a nonunion. So smoking can cause lung cancer in a way, but you don't know in a given patient whether that guy would have developed it anyway. You know that the odds of developing it are much higher if he smokes. And so with spine fusions, the literature, when you just put it in a nutshell, shows the fusion rate—the incidence of pseudarthrosis is two to three times as great in someone who is smoking as in someone who is not.

*Id.* at 319.

Dr. Weingarten's methodology was one generally accepted in the medical community and by the courts. He simply considered the possible recognized causes and eliminated those contradicted by the evidence before him. To use somewhat technical language, he began with scientific support for "general causation"—that smoking *can* cause nonunions—and concluded that smoking was likely the "specific" cause in this instance after he had eliminated the possibility that the accident had been the cause. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 990 (10th Cir. 2003) (distinguishing general and specific causation); *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1237 (10th Cir. 2004) (using the term "differential diagnosis" to describe the reasoning employed). The district court could therefore properly rule that there was a reliable basis for Dr. Weingarten's opinion regarding the effect of Mrs. Neiberger's smoking. In sum, Mrs. Neiberger has failed to point to any shortcoming in the support for Dr. Weingarten's testimony. (As an aside, we note that for Defendants to prevail, it was theoretically necessary only to eliminate the accident as a cause, although the jury might not have accepted that conclusion unless presented with an alternative cause.)

### 2. Adequacy of Expert Report

Mrs. Neiberger's motion in limine to limit Dr. Weingarten's testimony was construed by the district court as being based not only on Rule 702 but also on Federal Rule of Civil Procedure 37(c), which authorizes sanctions for failure to

comply with the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2). Without explicitly ruling whether Dr. Weingarten's report complied with Rule 26(a)(2), the district court decided to impose no sanctions. Mrs. Neiberger challenges that decision. We reject the challenge.

Rule 26(a)(2)(B) states that the disclosure of an expert witness "must be accompanied by a written report—prepared and signed by the witness."[2] Among other things, the report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). This provision imposes a

> duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.

Fed. R. Civ. P. 26 advisory committee's note ¶ 2 (1993 amend.). Violation of this duty subjects a party to sanctions under Rule 37(c)(1), which states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless. In addition to or

---

[2] The language of the rule in force at the time of trial has since been revised, but only for stylistic purposes. *See* Fed. R. Civ. P. 26 advisory committee's note (2007 amend.). For convenience, we use the revised language. The same is true of Rule 37, *see* Fed. R. Civ. P. 37 advisory committee's note (2007 amend.), and we likewise employ the revised language of that rule in our discussion.

instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions . . . .

Because "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court, " *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal quotation marks omitted), we review for abuse of discretion the district court's decision not to impose a Rule 37(c)(1) sanction, *see Doctor John's v. Wahlen*, 542 F.3d 787, 790 (10th Cir. 2008). There was no abuse of discretion here. Mrs. Neiberger has failed to show how she was prejudiced by any deficiency in the Rule 26 report prepared by Dr. Weingarten. As described above, the opinions expressed in Dr. Weingarten's report were the same as those to which he testified in his deposition introduced at trial. The report opined that smoking raises the risk of nonunion, that there was no radiographic evidence that the collision had loosened or displaced any hardware, that it was thus unlikely that the collision caused a fracture, and that Mrs. Neiberger's smoking was likely the cause of the nonunion. Mrs. Neiberger's complaint is that the report did not disclose the bases and data for these conclusions. But the only conclusion that she specifically points to as being unsupported is Dr. Weingarten's linking of smoking to nonunion. In our

discussion of her Rule 702 challenge we have already resolved that she has failed to identify any lack of support for his trial testimony on that issue. This leaves only the possibility that the trial testimony included support that was missing from his report. As far as we can tell, however, the only predicate for Dr. Weingarten's trial testimony that is absent from the report is the peer-reviewed literature saying that smoking can cause nonunions (and the resulting position statement of the AAOS). That absence did not prejudice Mrs. Neiberger. Her own expert, Dr. Odom, acknowledged the proposition that smoking increases the risk of nonunions. Indeed, even before this suit was filed, he had repeatedly warned Mrs. Neiberger of the risk. Moreover, medical literature on the subject was presented at Dr. Odom's deposition long before trial. There is a theoretical possibility that the lack of disclosure in Dr. Weingarten's report could have prejudiced Mrs. Neiberger in taking his discovery deposition or in formulating her strategy on calling experts. But Mrs. Neiberger does not argue that point and, given the noncontroversial nature of the link between smoking and nonunion, we see no chance of such prejudice having arisen.[3]

---

[3] Mrs. Neiberger also complains that Dr. Weingarten did not review a number of radiographic studies until shortly before his trial deposition. But she does not suggest that this "new" information was the foundation for any of Dr. Weingarten's opinions, and at trial she raised no objection based on his belated review of these records. We therefore reject this complaint.

As we understand the district court, it ruled that if there was any shortcoming in Dr. Weingarten's report, it did not prejudice Mrs. Neiberger's ability to prepare for trial. We affirm that ruling.

## B.  Evidence of Mrs. Neiberger's Medical Expenses

Under the Colorado no-fault statute, Mrs. Neiberger could bring a tort suit by proving (among other alternatives) that the accident had caused her to undergo reasonably needed medical treatment whose reasonable value exceeded $2,500. She challenges the district court's exclusion of testimony by her economics expert, Thomas Roney, and her occupational-therapy and life-care-planning expert, Doris Shriver, regarding her medical expenses. We discern no error.

We can quickly dispose of the claim regarding Shriver. The record on appeal contains only a few pages of Shriver's testimony, and no mention of medical expenses appears in this excerpt. As a result, we cannot determine what, if any, testimony was excluded. "A party who seeks to reverse the decision of a district court must provide an adequate record for this court to determine that error was committed." *Travelers Indem. Co. v. Accurate Autobody, Inc.*, 340 F.3d 1118, 1119 (10th Cir. 2003). Accordingly, we do not consider Mrs. Neiberger's contention with respect to Shriver's testimony.

In any event, Mrs. Neiberger loses on the merits. She testified that she had incurred $184,000 in medical bills "[s]ince the accident." Aplts. App. Vol. 2 at 266. But she did not put on testimony by a treating physician to establish that

particular outlays were reasonable and necessary to treat injuries caused by the accident. Although Dr. Odom testified that his treatment of Mrs. Neiberger "was necessary to try to heal her," *id.* at 307(e), his statement is ambiguous regarding whether the treatment was needed for her scoliosis, injuries caused by the accident, or both. Likewise, Mrs. Neiberger's family doctor, Dr. Victor Lopez, testified that his treatment of Mrs. Neiberger since the accident had been reasonable and necessary, but he did not identify specific treatments related to the accident or their costs. Thus, when Roney, who was to render his opinion of Mrs. Neiberger's total financial loss from the accident, began to offer testimony that incorporated the $184,000 figure given by Mrs. Neiberger, defense counsel objected. At the bench conference that followed, this exchange took place:

> [Defendants' counsel]: The objection is that even if [Mrs. Neiberger] was asked what the medical bills were, . . . that's not competent to establish that those medical bills are related to the accident or that they are reasonable and necessary. That information has not been offered. The plaintiffs have not listed any medical bills or medical bills summary or any sort of calculation as an exhibit in this case. . . .

> Court: What evidence is there of medical expenses beyond Mrs. Neiberger's testimony?

> [Mrs. Neiberger's counsel]: That's what we have, Your Honor, that she knows what she was billed and she knows what she was facing.

> [Defendants' counsel]: That's not competent, Your Honor.

*Id.* at 279–80. The district court sustained Defendants' objection.

Mrs. Neiberger never made the necessary evidentiary showing that her injuries from the accident required her to expend more than $2,500 for reasonably necessary medical or rehabilitative treatment. Even if she had attempted to introduce medical bills or bill summaries into evidence, she would still have needed to establish that the associated treatment was reasonable and necessary and stemmed from the accident. *See Jorgensen v. Heinz*, 847 P.2d 181, 183 (Colo. Ct. App. 1992). She asserts that her testimony about her medical expenses was sufficient foundation, arguing that because she received the treatment, her testimony as to the amount "would provide a reasonable inference that the medical expenses were incurred as a result of the incident and that the medical bills were reasonable and necessary." Aplts. Reply Br. at 31. We disagree. Mrs. Neiberger was not competent to testify to the reasonable need for her treatment or to its being caused by the accident (as opposed to her preexisting scoliosis or her smoking). These were matters for expert medical opinion. We review the exclusion of evidence for an abuse of discretion. *See Whittington v. Nordam Group Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005). The district court did not abuse its discretion in ruling on this issue.

## C.     Exclusion of Accident-Reconstruction Expert

Mrs. Neiberger also argues that the district court erred in refusing to allow her to call a second accident-reconstruction expert at trial. She acknowledges, however, that this issue relates only to the relative fault of those involved in the

accident, so we need reach the issue only if she prevails on one of the issues previously addressed in the opinion. Because she did not prevail, this issue is moot.

## III. CONCLUSION

We AFFIRM the judgment below.