**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HCG PLATINUM, LLC,

      Plaintiff Counter Defendant -
      Appellee,

v.

PREFERRED PRODUCT PLACEMENT
CORPORATION,

      Defendant Counterclaimant
      Third-Party Plaintiff - Appellant,

v.

RIGHT WAY NUTRITION LLC;
KEVIN WRIGHT; TY MATTINGLY;
ANNETTE WRIGHT; PRIMARY
COLORS, LLC; WEEKES HOLDINGS,
LLC; JULIE C. MATTINGLY,

      Third-Party Defendants -
      Appellees.

No. 15-4157

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:11-CV-00496-RJS)**

---

Scott E. Schutzman, of the Law Offices of Scott E. Schutzman, Santa Ana, California, for
Defendant Counterclaimant Third-Party Plaintiff-Appellant.

Kimberly N. Baum (Evan A. Schmutz, on the briefs), of Durham Jones & Pinegar, P.C., Lehi, Utah, for Plaintiff Counter Defendant-Appellee and Third-Party Defendants-Appellees.

—————————————

Before **HOLMES**, **SEYMOUR**, and **MORITZ**, Circuit Judges.

—————————————

**HOLMES**, Circuit Judge.

—————————————

HCG Platinum, LLC ("HCG") and Preferred Product Placement Corporation ("PPPC") entered into a Manufacturer's Representative Agreement ("Marketing Agreement"), under which PPPC agreed to place HCG products into specified retailers in exchange for a percentage of the proceeds. Shortly thereafter, HCG filed the underlying breach-of-contract action against PPPC, seeking compensatory damages for PPPC's alleged breaches and a declaratory judgment that HCG properly terminated the Marketing Agreement on account of these breaches. PPPC counterclaimed for breach of contract and asserted third-party contract claims against individuals and entities associated with HCG.

In advance of trial, HCG moved to preclude PPPC from presenting evidence of damages, asserting that PPPC's initial (and never supplemented) disclosures provided an insufficient description and computation of PPPC's damages theory. Finding PPPC's initial disclosures insufficient and its request to compel discovery untimely, the district court excluded the damages evidence from PPPC's disclosures. Exclusion of that evidence, in turn, necessarily barred PPPC from pursuing its counterclaims, and the

district court subsequently entered judgment against PPPC on that basis. PPPC appeals, arguing that the district court abused its discretion by imposing a discovery sanction (exclusion) that carried the force of dismissal, despite the fact that its discovery shortcomings resulted in only minimal and curable prejudice to HCG.

Exercising jurisdiction under 28 U.S.C. § 1291, we **reverse** the district court's judgment in favor of HCG on PPPC's counterclaims, and **remand** with instructions that the district court reconsider the exclusion of PPPC's damages evidence under an analysis that considers, among other things, the availability of lesser sanctions.

## I

## A

On March 30, 2010, HCG, a Utah-based manufacturer of dietary supplements, contracted with PPPC to "actively promote and market" HCG products. Aplt.'s App., Vol. II, at 73 (Manufacturer's Representative Agreement, dated Mar. 30, 2010). In exchange for these services, HCG agreed to pay PPPC a fee and staggered commissions based on PPPC's placement of HCG products within specified tiers of retailers.

Separately, the parties entered into a "Confidentiality Non-Circumvent Agreement" ("Non-Circumvention Agreement"), *id.* at 79, which recognized that the parties' relationship required PPPC to disclose confidential business information concerning its "customer lists and information relating to customers, marketing plans and strategies, . . . details of negotiations with current partners and business associates, details of business opportunities or projects," and other information, *id.* As a result, the Non-

3

Circumvention Agreement precluded HCG from "directly or indirectly interfer[ing] with, circumvent[ing], avoid[ing], by-pass[ing], obviat[ing], influenc[ing], or otherwise control[ling]" PPPC's "interests, relationship[s], agreements or arrangements" with any third-parties, *id.* at 80.

**B**

In the following year, HCG filed a breach-of-contract action in Utah state court, alleging that PPPC breached the Marketing Agreement by "fail[ing] to execute a sales agreement with all of the [retailers in HCG's top two tiers], except GNC, Europa, Bartell Drugs, Miejer [sic], [and] Rite Aid." Aplt.'s App., Vol. I, at 26 (Compl., filed May 9, 2011). After removing the matter to federal district court, PPPC filed a counterclaim and third-party complaint, alleging that HCG (and associated entities and individuals) breached the Marketing and Non-Circumvention Agreements by failing to pay outstanding commissions and "interfering" with PPPC's third-party relationships. *Id.*, Vol. II, at 70 (First Am. Countercl. and Third Party Compl., filed Nov. 23, 2011). PPPC therefore sought compensatory damages "in an amount according to proof," consequential damages, attorneys' fees and costs, and injunctive relief against future violations of the Non-Circumvention Agreement. *Id.* at 70–71.

On August 4, 2011, PPPC served initial disclosures providing the following "Computation of Damages":

1. Static Analysis: $1,840,243.50*

Based on May 11, 2011 Invoice for April sales to GNC, Europa

4

Sports and Bartell Drug. $47,185.73 x 39 months (36 months until first termination date + 3 month notice period) = $1,840,243.50 (* This figure does not include sales to Meijer)

a.   Note: Meijer Supermarkets has attempted to pay HCG $16,703.00 for products shipped in February and March 2011, but as HCG has not set up EDI (Electronic Data Exchange) and no payments were made. PPPC is owed $1,670.30 for these sales.

2.   Dynamic Analysis: Based on projections in attached chart: 7,538,840.00[1]

a.   Existing Accounts: GNC, Europa Sports, Bartell Drug, Meijer with sales increasing gradually over the life of the Agreement: $3,838,700.00

b.   Pending Accounts: Vitamin Shoppe, Vitamin World, Rite Aid, CVS, Walgreens, Savon, Wal-Mart, etc., that order HCG products over the life of the Agreement with sales to these retailers increasing gradually: $3,610,140.00

c.   All Accounts: Existing Accounts, other specialty market accounts (Vitamin Shoppe, Vitamin World) and other mass-market chains (Rite Aid, CVS, Walgreens, etc. . .) that order HCG products over the life of the Agreement with sales to these retailers increasing gradually: $7,538,840.00

3.   Additional Damages: To be determined

HCG has failed to pay PPPC 1% for every bottle sold. HCG has only paid PPPC for bottles sold to PPPC

---

[1]   PPPC referenced an "attached chart" in its "Dynamic Analysis," Aplt.'s App., Vol. VI, at 204, but never provided the actual graphic. In its reply brief, PPPC confusingly states that "a chart was and could have always been provided and brought to PPPC's attention that it was missing." Aplt.'s Reply Br. at 3 (capitalization altered) (emphasis omitted). The existence of the chart has no impact on this appeal.

> customers. These additional damages will be determined upon inspection of HCG books and records.

Aplt.'s App., Vol. VI, at 204–05 (numbering altered) (Initial Disclosures, dated Aug. 4, 2011). Thus, the damages aspect of PPPC's initial disclosures set forth several different calculations, each without evidential support or significant written explanation.

Over the course of the next two years, PPPC appears to have requested additional information concerning sales under the Marketing Agreement,[2] but claims that HCG provided only a "one page conclusory -- conclusory statement" that "said $10 million, and [then] broke out what was sold through GNC." Dist. Ct. Docket No. 139, at 51 (Tr. Final Pretrial Conference, dated Sept. 2, 2015).[3] Given that disclosure, PPPC subpoenaed GNC's records and allegedly discovered that HCG's discovery response "was off by a million dollars." *Id.* Nevertheless, PPPC never moved to compel more informative or meaningful discovery responses, nor supplemented its own damages disclosures to account for the alleged deficiency, and factual discovery ended on June 12, 2012.

Following dispositive motion practice, on March 5, 2015, the district court granted

---

[2]     Although the parties acknowledge that these early discovery efforts took place, neither PPPC's discovery requests nor HCG's responses have been included in the record. Although the district court docket suggests their existence, *see* Aplt.'s App., Vol. I, at 9–10 (reproducing the district court docket, which lists the certificates of service for the parties' various discovery requests), we have no method of independently substantiating their contents.

[3]     The transcript found in PPPC's appendix includes only thirty-four pages of the one-hundred page district court transcript. *See* Aplt.'s App., Vol. VII, at 222–56. Nevertheless, the entire transcript was filed with the district court, and we have directly accessed it from the court. *See* FED. R. APP. P. 10(a) (noting that "the record on appeal" includes "the original papers and exhibits filed in the district court").

PPPC leave to serve follow-up interrogatories concerning HCG's ongoing product sales, and leave to file "additional motions" within two weeks.[4] Aplt.'s App., Vol. I, at 12–13. PPPC served follow-up discovery requests on April 1, 2015, and HCG served responses on April 30, 2015. Upon receipt, PPPC deemed HCG's discovery responses inadequate (and supposedly raised the inadequacy during an informal meet and confer in June of 2015), but *again* made no effort to address the deficiency with the district court through filing a motion to compel or otherwise.

Rather, the parties prepared for the final pretrial conference and trial. In connection with that process, on August 11, 2015, HCG moved to preclude PPPC from presenting any evidence of damages under the Marketing Agreement. In doing so, HCG argued that PPPC's initial disclosures—i.e., the *only* document PPPC ever produced on the issue of damages—described projections that would be inadmissible without the benefit of expert testimony. HCG reasoned that, because PPPC never designated a damages expert, it would be unable to put on *any* evidence of damages. PPPC responded to HCG's motion on August 24, 2015, by moving to compel more adequate responses to its supplemental interrogatories (served in April of 2015), and requesting that discovery be reopened on the issue of damages.

## C

The district court resolved the parties' motions during the final pretrial conference

---

[4]     In addition, the district court scheduled a final pretrial conference for September 2, 2015, and the ultimate trial (if necessary) for September 22, 2015.

on September 2, 2015. Beginning with HCG's motion, the district court stated that PPPC's failure to supplement the damages aspect of its initial disclosures, as required by Federal Rule of Civil Procedure 26(e), meant that PPPC could not introduce evidence of damages unless its discovery deficiency proved harmless or substantially justified within the meaning of Federal Rule of Civil Procedure 37(c)(1). *See* Dist. Ct. Docket No. 139, at 51, 28-29. The district court then described, at least initially, our established "four factor test" that (as relevant here) inquires regarding: (1) the prejudice or surprise to the party against whom the damages evidence would be offered, HCG; (2) HCG's ability to cure that prejudice; (3) the extent to which the introduction of new damages evidence would disrupt the trial; and (4) whether bad faith or willfulness motivated PPPC's discovery failures. Dist. Ct. Docket No. 139, at 29; *accord id.* at 39 ("this is going to boil down to those four factors"); *see also Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (the "*Woodworker's* factors"). Thereafter, the district court offered some prefatory remarks and conclusions concerning HCG's motion.

Substantively addressing only the fourth *Woodworker's* factor, the district court specifically found no evidence to support "a finding or conclusion . . . about bad faith or willfulness." Dist. Ct. Docket No. 139, at 30; *see also id.* at 68 (repeating the same conclusion, *after* attorney argument: "I am not finding that there's any bad faith or willfulness on the part of PPPC. In fact I'm affirmatively finding that on the record before me there's no basis on which I could find bad faith."). With that conclusion, the

8

district court reasoned that the analysis would "focus on prejudice and harmlessness," *id.* at 30, and primarily whether the prejudice derived from PPPC's discovery failure warranted "throw[ing] [PPPC] out of court on [its] claims for millions of dollars in damages," *id.* at 38. Focusing on that inquiry, the district court questioned whether the circumstances favored exclusion, because PPPC's initial disclosures provided "notice of the basis of the damage claim" and implied that the ultimate calculation would be "derive[d] from HCG's own books and records, not from external sources." *Id.* Despite those initial remarks (all of which suggested an inclination towards *denying* HCG's motion), the district court opened the floor to argument on "the right way to think about [the issue]." *Id.*

For its part, HCG argued that the "law" compelled exclusion, *id.* at 38, because the initial disclosures provided no precise quantification of PPPC's claimed damages, nor any explanation of PPPC's damages theory. *See id.* at 33–34. Rather, HCG described PPPC's disclosure as "a series of future projection damages, four of them"—$1.84 million, $3.83 million, $3.6 million, and $7.5 million—unsupported by expert or documentary materials, and lacking any explanation of PPPC's calculations. *Id.* at 34; *accord id.* at 42–43. HCG then argued that the paucity of information in PPPC's damages disclosure prejudiced HCG's defense, by leaving it "completely unaware" of PPPC's position on damages. *Id.* at 35. Finally, HCG claimed that the prejudice proved incurable *and* disruptive, because reopening discovery and reviewing new documents on the eve of trial would be burdensome, expensive, and would require an adjournment of

9

the trial date. *See id*. at 44–46.

PPPC, in turn, attributed part of its discovery deficiency to the inadequacy of HCG's damages-related discovery, *see* Dist. Ct. Docket No. 139, at 50–58, and emphasized that its conduct caused only "slight" prejudice, which could easily be remedied through limited additional discovery, *id.* at 67.

Following a brief recess, the district court reconvened the hearing with the following statement:

> I've changed my mind a little bit about what's next to happen. I've seen this before twice somewhat recently, and I want to be consistent in my treatment of this issue. This is the way I've seen it before and it's the way I continue to see it, and I'm prepared to make a ruling. I'm going to make a ruling on the motion in limine without further argument about how it comes out . . . .

*Id.* at 58. Acknowledging that HCG "clearly had discoverable and relevant information about its sales that PPPC asked for and wanted," the district court expressed "enormous" "dislike [for] sharp discovery practices," *id.* at 59, particularly "when the party who resists the open and forthcoming disclosure of necessary and important information comes to court pointing at the failure of the other side to make some proof," *id.*

Despite these observations, the district court explained that:

> The rules impose a specific obligation on the party seeking the discovery . . . to take up that issue if it arises in a timely fashion. The rules require that if [a party] receive[s] discovery responses that . . . are inadequate, that [party must] raise that issue at the time and manner and sequence of the case that the question can be addressed and resolved, and a magistrate judge or [district judge] [can] decide the issue, order the additional production of the information or say that it's protected or it's sufficient and answer those questions at a time when the parties can

10

then continue to order the litigation and make decisions about how to proceed.

*Id.* at 59. Beginning to apply those tenets to the circumstances before it, the district court stated that:

> The time to raise the sufficiency of a discovery response is not after the motion for summary judgment is filed, it is not on the eve of trial. If there was a failure in the production of discovery, the time to address it was in discovery. There was no motion to compel filed in connection with the 2011 or 2012 discovery responses or the adequacy of the responses. There is one now, of course, in response to the 2015 interrogatories.

*Id.* at 59–60.

As these comments reveal, the district court found PPPC's motion to compel "untimely" (given the late, eve-of-trial posture of the proceedings), *id.* at 60, and labeled PPPC's damage "projection[s]" speculative "presumption[s]" in plain violation of its discovery obligations. *Id.* at 65. Without referencing the *Woodworker's* inquiry (or its imbedded considerations),[5] the district court granted HCG's motion to preclude the

---

[5]    Although the district court referenced the *Woodworker's* factors during its prefatory remarks, the district court's oral ruling made no mention of its earlier statements concerning the *Woodworker's* analysis. Nor did the district court provide any explanation for its drastic departure from its initial impressions. *See, e.g.*, Dist. Ct. Docket No. 139, at 30 (finding no evidence of bad faith or willfulness); *id.* at 38 (explaining the limitations of any prejudice, given HCG's "notice of the basis of the damage claim" and its derivation, and implying that the *Woodworker's* analysis favored PPPC); *id.* at 44 (finding "an opportunity to cure [the prejudice] by obtaining the information and testing it").

Rather, after counsel for PPPC challenged the district court's ruling under "the four-part [*Woodworker's*] test," *id.* at 67, the district court simply restated its earlier determination that the fourth *Woodworker's* factor—bad faith or willfulness—counseled

(continued...)

11

introduction of any "evidence or testimony" based upon PPPC's initial damages

disclosures, *id.* at 66, and consequently denied PPPC's motion to compel "for the reasons

stated in connection with" HCG's motion, *id.* at 88.[6] *See also* Aplt.'s App., Vol. III, at

101 (Order, dated Sept. 3, 2015). Nevertheless, the district court believed that the record

contained "sufficient and adequate bas[es] . . . for PPPC to prove the fact of damages at a

trial, notwithstanding [the] ruling on the availability of testimony about the amount of

damages." Dist. Ct. Docket No. 139, at 65–66.

Following additional briefing on the practical implications of exclusion, however,

on September 17, 2015, the district court determined that its "evidentiary ruling

preclude[d] PPPC from bringing evidence of damages at trial, leaving no basis on which

to reasonably estimate damages." Aplt.'s App., Vol. V, at 163 (Order, dated Sept. 17,

2015). As a result, the district court concluded that PPPC could not "proceed to trial," *id.*,

and entered judgment in favor of HCG on PPPC's counterclaims. HCG then voluntarily

---

[5](...continued)
*against* exclusion of evidence, *see id.* at 68 ("I am not finding that there's any bad faith or
willfulness on the part of PPPC. In fact I'm affirmatively finding that on the record
before me there's no basis on which I could find bad faith."). Despite being reminded of
the remainder of the *Woodworker's* criteria, however, the district court appears to have
overlooked it, as detailed *infra*.

[6]      The district court did not separately consider PPPC's motion to compel,
denying it instead for the reasons the district court granted HCG's motion. Like the
district court, we do not separately address PPPC's motion to compel, but will direct that
the district court revisit that motion as part of the overall remand specified herein.

12

dismissed its own affirmative claims without prejudice,[7] and PPPC's notice of appeal

followed on October 15, 2015.[8]

---

[7]     Ordinarily, "[p]arties may not confer appellate jurisdiction upon us by obtaining a voluntary dismissal without prejudice of some claims so that others may be appealed." *Eastom v. City of Tulsa*, 783 F.3d 1181, 1184 (10th Cir. 2015) (alteration in original) (quoting *Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir. 1998)); *see also Cook v. Rocky Mountain Bank Note Co.*, 974 F.2d 147, 148 (10th Cir. 1992).  In this case, however, the district court's judgment against PPPC ripened into a final and appealable order, when the district court subsequently certified the judgment as final under Federal Rule of Civil Procedure 54(b).  *See Woodruff v. Herrera*, 623 F.3d 1103, 1109 n.5 (10th Cir. 2010) ("We initially questioned whether we had jurisdiction over this appeal because the district-court order being appealed did not appear to be a final, appealable order.  The district court later entered an order certifying under FED. R. CIV. P. 54(b) that the claims at issue on appeal are final and appealable and that there is no just reason for delay.  Accordingly, we have jurisdiction over this appeal."); *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988) (holding that when an "appellant obtains a 54(b) certification after the notice of appeal was filed," as here, "we will deem the notice of appeal to ripen as of the date of certification and will accept the jurisdiction").  Accordingly, we have jurisdiction over the district court's *final* judgment in favor of HCG on PPPC's counterclaims.

[8]     In the aftermath of PPPC's notice of appeal, HCG filed a motion for attorneys' fees.  The district court granted HCG's motion on October 27, 2015, and subsequently entered a judgment for attorneys' fees on November 25, 2015.  PPPC, however, never filed a new or amended notice of appeal with respect to *that* judgment.  Rather, in its appellate briefing, PPPC assumes our appellate jurisdiction over the attorneys' fees award, and then submits that the attorneys' fees issue will become moot if we reverse, and will stand unchallenged if we affirm.  *See* Aplt.'s Opening Br. at 12.

Although we ultimately reverse the district court's judgment (and PPPC mounts no substantive challenge to the attorneys' fees award), we clarify the limited contours of our appellate jurisdiction over this appeal.  Federal Rule of Appellate Procedure 3(c)(1)(B) requires a notice of appeal to "designate the judgment, order, or part thereof being appealed," FED. R. APP. P. 3(c)(1)(B), and those designations circumscribe the scope of our appellate review, *see Cunico v. Pueblo Sch. Dist. No. 60*, 917 F.2d 431, 444 (10th Cir. 1990).  Nevertheless, "our jurisdiction will not be defeated if other papers [like a docketing statement or opening appellate brief] filed within the [thirty-day] time period for filing the notice of appeal provide the 'functional equivalent' of what Rule 3

(continued...)

13

## II

Federal Rule of Civil Procedure 37(c)(1)[9] addresses a party's failure to disclose or supplement initial disclosures, providing that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless

---

[8](...continued) requires." *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997) (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988)).

The underlying proceedings here plainly reveal that we lack appellate jurisdiction over the district court's attorneys' fees award. Simply stated, PPPC filed no new or amended notice of appeal following the district court's judgment for attorneys' fees, and PPPC's opening brief (filed January 19, 2016) cannot be treated as the functional equivalent of a notice of appeal, because it came more than thirty days after the district court's entry of judgment for attorneys' fees (on November 25, 2015). Accordingly, we lack jurisdiction to consider the attorneys' fees award on appeal. *See* FED. R. APP. P. 4(a)(4)(B)(ii); *see also Art Janpol Volkswagen, Inc. v. Fiat Motors of N. Am., Inc.*, 767 F.2d 690, 697 (10th Cir. 1985) (explaining that a "separate notice of appeal is . . . required to obtain review" of an attorneys' fees determination that follows a judgment on the merits).

[9] Federal Rule of Civil Procedure 26(a)(1)(A)(iii) states that "a party must, without awaiting a discovery request, provide . . . a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying . . . the documents or other evidentiary material" that provide the basis for each computation. Federal Rule of Civil Procedure 26(e)(1)(A) builds on this obligation, by requiring "[a] party who has made a disclosure under Rule 26(a)" to "supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response [has proved to be] incomplete or incorrect." PPPC does not challenge on appeal the district court's necessary determination that it committed a Rule 26(a) and (e) violation, so our inquiry focuses directly on whether Rule 37(c)(1) (as well as our related precedent) permitted exclusion of PPPC's damages evidence.

14

the failure was substantially justified or is harmless."[10]  "[T]he determination of whether a Rule 26(a) [or (e)] violation is justified or harmless is entrusted to the broad discretion of the district court."  *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191–92 (10th Cir. 2009) (quoting *Woodworker's Supply, Inc.*, 170 F.3d at 993); *accord Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).  However, the Rule 37(c)(1) inquiry "depends upon several factors that a district court *should* consider in exercising its discretion."  *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1129 (10th Cir. 2011) (emphasis added).  These factors include: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply, Inc.*, 170 F.3d at 993.

Ultimately, we review the district court's decision to preclude evidence for abuse of discretion, *see Neiberger*, 566 F.3d at 1192; *Jacobsen*, 287 F.3d at 953; *Woodworker's Supply, Inc.*, 170 F.3d at 993, meaning that we will reverse only if the district court's decision rests "'on an erroneous conclusion of law,' or would result in 'fundamental unfairness in the trial of the case,'" *Jacobsen*, 287 F.3d at 953 (first quoting *Kiowa Indian*

---

[10]  "In addition to or instead of" exclusion, the district court may "order payment of" reasonable expenses, "inform the jury of the party's failure," or "impose" an array of "other appropriate [and lesser-included] sanctions."  FED. R. CIV. P. 37(c)(1)(A)–(C).

15

*Tribe v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998); then quoting *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994)).

## III

PPPC does not contest on appeal the district court's necessary finding that it committed a discovery violation. That violation admittedly inhibited the orderly discovery scheme embodied by the federal rules. Nevertheless, under the unique facts presented here, we conclude that the district court abused its discretion by imposing a discovery sanction (i.e., exclusion of evidence) that necessarily barred PPPC from pursuing its counterclaims. Accordingly, for the reasons that follow, we will reverse the district court's judgment in this respect, and remand with instructions for further proceedings.

## A

Although "'[a] district court need not make *explicit* findings concerning the existence of a substantial justification or the harmlessness' of a Rule 26(a) [or (e)] violation," *Jacobsen*, 287 F.3d at 953 (alteration in original) (emphasis added) (quoting *Woodworker's Supply, Inc.*, 170 F.3d at 993), our decisions plainly reveal that the *Woodworker's* factors *should* guide the district court's exercise of discretion. *See, e.g.*, *Eugene S.*, 663 F.3d at 1129 (noting that "a district court should consider [the *Woodworker's* factors] in exercising its discretion"); *Jacobsen*, 287 F.3d at 953 (stating that "the court should consider the following [*Woodworker's*] factors"); *Woodworker's Supply, Inc.*, 170 F.3d at 993 (explaining that the *Woodworker's* factors "should guide

16

[the district court's] discretion"); *see also Guerrero v. Meadows*, 646 F. App'x 597, 599 (10th Cir. 2016) (unpublished) (explaining that the *Woodworker's* factors "guide the district court's discretion" under Rule 37(c)(1)); *Gillum v. United States*, 309 F. App'x 267, 269 (10th Cir. 2009) (unpublished) (reciting the same premise); *Hirpa v. IHC Hosps., Inc.*, 50 F. App'x 928, 932 (10th Cir. 2002) (unpublished) (same). Thus, although a district court need not mechanically recite the terms "substantial justification" or "harmlessness," the district court's ultimate reasoning *should* reveal consideration of the *Woodworker's* criteria. *See Jacobsen*, 287 F.3d at 953 (finding that the district court "abused its discretion by misapplying two of [the *Woodworker's*] factors and not addressing the other two factors").

The record in this appeal, however, strongly suggests that the district court ultimately overlooked the lion's share of the *Woodworker's* inquiry. Notably, the district court began the final pretrial conference by reciting the *Woodworker's* factors and expressing an initial view that three of the those factors—prejudice, curability, and bad faith or willfulness—weighed *against* exclusion. *See* Dist. Ct. Docket No. 139, at 29 (explicitly describing the *Woodworker's* factor); *id.* at 30 (finding that the record contained no indication of bad faith or willfulness); *id.* at 38 (explaining the limitations of any prejudice, given HCG's "notice of the basis of the damage claim," and its derivation); *id.* at 44 (finding "an opportunity to cure [the prejudice] by obtaining the information and testing it"). During the later, decisional portion of its oral ruling, however, the district court resolved HCG's motion without even a general reference to the inquiry compelled

17

by the *Woodworker's* factors. Citing the need for "consistent . . . treatment," *id.* at 58, the district court instead excluded PPPC's damages evidence on analytic grounds that do not clearly and meaningfully embody (without more) the *Woodworker's* inquiry: (1) the overall "[in]sufficiency" of PPPC's initial damages disclosures, *id.* at 61–65, and (2) the generally "untimely" nature of PPPC's motion to compel additional discovery responses from HCG, *id.* at 60. For those two reasons, the district court "disallow[ed] any evidence or testimony about the amount of those damages," and granted HCG's motion. *Id.* at 66.

Thereafter, counsel for PPPC requested "a short record" on the district court's decision, and proceeded to express his "disagree[ment] with the ruling" based on PPPC's evaluation of "the four-part [*Woodworker's*] test." *Id.* at 67. Addressing each *Woodworker's* factor, counsel for PPPC argued that PPPC's "failure to supplement the pretrial disclosure" produced "slight" prejudice (first *Woodworker's* factor) that could be "cure[d]" without "disrupt[ing] the trial" (second and third *Woodworker's* factors), and restated that the discovery violation occurred without "bad faith or willfulness on [PPPC's] part" (fourth *Woodworker's* factor). *Id.* at 67–68. Despite being confronted with the entire *Woodworker's* inquiry, the district court responded only by reiterating its earlier "finding" of no "bad faith or willfulness on the part of PPPC," *id.* at 68; it *again* offered no opinion on the prejudice to HCG, the curability of that prejudice, or the extent to which new evidence would disrupt the scheduled bench trial (i.e., the other *Woodworker's* factors).

Viewed that way, we are constrained to conclude that the record reflects that the

18

district court reached an arbitrary outcome that essentially overlooked most of the *Woodworker's* criteria (except for the fourth factor).  The district court's apparent failure to consider this criteria amounts to legal error, and we must conclude that the district court abused its discretion on that ground alone.[11]  *See Jacobsen*, 287 F.3d at 953 (finding that the district court "abused its discretion by misapplying two of [the *Woodworker's*] factors and not addressing the other two factors").

## B

Nevertheless, even if we assumed that the district court tacitly weighed and resolved the *Woodworker's* factors, we would still find an abuse of discretion, because the district court failed to reconcile its ultimate decision on HCG's motion with its expressed initial leanings.

As detailed *supra*, the district court opened the final pretrial conference with the express conclusion that the fourth factor weighed against exclusion, *see* Dist. Ct. Docket No. 139, at 29–30 (finding no bad faith or willfulness), and with observations that signaled that PPPC's discovery violations caused limited and readily curable prejudice, *see id.* at 38 (suggesting limited prejudice); *id.* at 40 (suggesting an opportunity to cure).

---

[11]     HCG's citation to an unpublished decision of our court, *Bettis v. Hall*, 543 F. App'x 819 (10th Cir. 2013) (unpublished), misses the mark.  In *Bettis*, the district court excluded evidence of a "new, alternative" damages theory, but permitted the plaintiffs to proceed to trial on their original damages theory.  *Id.* at 822; *see also id.* at 821 (noting that the plaintiffs ultimately obtained a jury verdict of $302,000).  In doing so, the district court made a specific finding of prejudice, and a panel of our court affirmed on abuse-of-discretion review.  The findings on review here markedly differ from those faced by the *Bettis* court, as discussed herein.

19

In other words, the district court expressed a clear inclination towards *denying* HCG's motion. The district court, however, ultimately *granted* HCG's motion, adopting a conclusion that ran inexplicably counter to its initial leanings.

Given this conflict, the district court should have set forth the reasoning for exercising its discretion to exclude evidence under Rule 37(c)(1). "In making a discretionary decision, a court must present an explanation for its choice sufficient to enable a reviewing court to determine that it did not act thoughtlessly, but instead considered the factors relevant to its decision and in fact exercised its discretion." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1310 (10th Cir. 2007) (quoting *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 491 (7th Cir. 2007)); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1226 (10th Cir. 2007) (holding that a district court must explain its discretionary denial of prejudgment interest); *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1329 (10th Cir. 1998) (holding that a district court must provide an "adequate explanation" for its discretionary denial of costs); *cf. Reeder v. Am. Econ. Ins. Co.*, 88 F.3d 892, 896 (10th Cir. 1996) (emphasizing, in the abuse-of-discretion context, the need for the district court to provide a "reasoned explanation" for its discretionary judgment). The district court's failure to explain its sharp change of analytic direction in ultimately *granting* HCG's motion, in itself, constitutes an abuse of discretion.

## C

In sum, we reverse the district court's judgment in favor of HCG on PPPC's

20

counterclaims and remand to allow the district court to specifically reevaluate the exclusion of PPPC's damages evidence under the *Woodworker's* analysis.[12] Given the severe effect of exclusion here, however, we conclude, for the reasons that follow, that the district court in particular should evaluate the efficacy of lesser sanctions in conjunction with the traditional *Woodworker's* analysis.

Our decisions offer little guidance on how to apply the *Woodworker's* inquiry where the exclusion of evidence carries the force and effect of dismissal. We have, however, articulated helpful reasoning in connection with analogous discovery sanctions under Federal Rule of Civil Procedure 37(b)(2). Rule 37(b)(2) permits a court to issue "[a]n order . . . dismissing the action," among an array of other sanctions, "[i]f a party . . . fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2)(A)(v). Additionally:

> Before imposing dismissal as a sanction [under this rule], a district court should ordinarily evaluate the following factors on the record: "(1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."

*The Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (second and

---

[12] We could evaluate the *Woodworker's* factors on appeal, *see Jacobsen*, 287 F.3d at 953–954 (addressing and applying each *Woodworker's* factor). Nevertheless, because we direct the district court to consider the efficacy of lesser sanctions (in conjunction with the traditional *Woodworker's* inquiry), we deem it more advisable on these facts to allow the district court to do so in the first instance.

third alterations in original) (quoting *Gripe v. City of Enid*, 312 F.3d 1184, 1187 (10th Cir. 2002)); *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992) (original source of the so-called *Ehrenhaus* factors).

Discussing those factors, we have described dismissal as "an extreme sanction," *Ehrenhaus*, 965 F.2d at 920, appropriate "[o]nly when the aggravating factors [like bad faith or willfulness] outweigh the judicial system's strong predisposition to resolve cases on their merits," *id.* at 921 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1521 n.7 (10th Cir. 1988)); *see also id.* at 920 ("dismissal represents an extreme sanction appropriate only in cases of willful misconduct").  Relatedly, we have directed that dismissal under Rule 37(b)(2) "be used as a weapon of last, rather than first, resort," *id.* (quoting *Meade*, 841 F.2d at 1520 n.6), because "a lesser sanction will [often] deter the errant party from further [discovery] misconduct," *id.* at 920; *accord Mobley v. McCormick*, 40 F.3d 337, 341 (10th Cir. 1994) (expressing "particular[] concern[] with the trial court's failure to consider whether a lesser sanction would be appropriate" in imposing the severe sanction of dismissal with prejudice); *Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993) ("[D]ismissal is a severe sanction and is not ordinarily warranted if lesser sanctions would be effective."); *see also The Procter & Gamble Co.*, 427 F.3d at 741 (reversing the district court for, among other reasons, failing to consider the efficacy of lesser sanctions as alternatives to dismissal).

Although this case concerns exclusion of evidence under Rule 37(c)(1) (rather than dismissal for violation of a discovery order under Rule 37(b)(2)), the line of reasoning

22

applied in our Rule 37(b)(2) decisions fits comfortably within the Rule 37(c)(1)
framework implicated here, and has already been applied by at least one panel of our
court in the Rule 37(c)(1) setting under analogous circumstances. *See Gillum*, 309 F.
App'x 267.

In *Gillum*, Kathleen Gillum brought a medical malpractice claim against the
United States on behalf of her deceased husband, asserting that the United States's
delayed diagnosis and treatment "caused [her deceased spouse] more pain and suffering
and decreased the quality of his remaining life."[13] *Id.* at 268. The *Gillum* district court
entered a scheduling order that required Ms. Gillum's expert reports to be submitted by
October 20, 2007, set a factual discovery deadline of February 15, 2008, and set trial for
March 10, 2008. *See id.* Two days before the expert discovery deadline, Ms. Gillum
named John Eckardt, M.D. as her testifying medical expert. One month later, Dr. Eckardt
submitted a "brief report" which restated Ms. Gillum's underlying theory of liability, but
offered no "reasons for these conclusions" nor provided "the other [disclosures] required
by Federal Rule of Civil Procedure 26(a)(2)(B)."[14] *Id.* Counsel for the United States,

---

[13] Mr. Gillum received treatment from the "Veterans Affairs Medical Clinic in Oklahoma City," making the United States the proper defendant. *Gillum*, 309 F. App'x at 268.

[14] Rule 26(a)(2)(B) generally provides that the disclosure of an expert witness "must be accompanied by a written report—prepared and signed by the witness." FED. R. CIV. P. 26(a)(2)(B). The required report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i), (ii).

however, undertook an independent investigation, and proceeded to take Dr. Eckardt's expert deposition on December 3, 2007. *Id.*

Following the deposition, the United States moved to exclude Dr. Eckardt's testimony under Federal Rule of Civil Procedure 37(c)(1), and separately moved for summary judgment on the ground that Ms. Gillum could not establish her prima facie case without the benefit of Mr. Eckardt's (presumably excludable) expert testimony. *See id.* Applying the *Woodworker's* inquiry, the district court found that the inadequate expert report incurably prejudiced the United Stated by depriving it of the "one chance" to "effective[ly] depos[e]" the expert "flat-footed, with the benefit of the homework." *Id.* at 269 (quoting the record). The district court then concluded that "new rounds of expert work" would disrupt the trial schedule, but found (as here) "no bad faith or willfulness." *Id.* at 270. With that analysis, the district court excluded Dr. Eckardt, and subsequently entered summary judgment in favor of the United States. *See id.* at 270.

A panel of this court reversed, concluding that the district court "abused its discretion in analyzing the 'cure' factor," because the court "improperly focused on the fact that the inadequate report permanently deprived the United States of the opportunity to confront Dr. Eckardt 'flat-footed' at his deposition." *Id.* at 270. Emphasizing that "litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits," the panel reasoned that "any prejudice accruing to the United States from [the] inadequate opportunity to prepare for the first deposition" could be cured through an additional deposition at Ms. Gillum's expense. *Id.* Citing our Rule

24

37(b)(2) decisions, the panel then concluded that "the total exclusion of Dr. Eckardt's testimony, which necessarily resulted in the grant of summary judgment for the United States, was too extreme a sanction." *Id.* (citing *Ehrenhaus*, 965 F.2d at 921).

In other words, the *Gillum* court embraced the notion embodied in our Rule 37(b)(2) decisions that district courts should consider the efficacy of lesser sanctions, where the exclusion of evidence has the necessary force and effect of a dismissal. Although *Gillum* constitutes non-binding precedent, *Gillum* closely resembles the events underlying this appeal, and we find *Gillum*'s implicit incorporation of a lesser-sanctions approach to the Rule 37(c)(1) inquiry persuasive for three salient reasons. First, the lesser-sanctions analysis finds its natural origins in our Rule 37(b)(2) decisions, discussed *supra*, and particularly our repeated recognition therein that dismissal constitutes an extreme sanction that typically is appropriate *only* in cases of bad faith or willful misconduct.

Second, a lesser-sanctions inquiry finds support within the overall structure of Rule 37(c)(1), which expressly empowers district courts to impose sanctions *short of* exclusion. *See* FED. R. CIV. P. 37(c)(1)(A)–(C) (listing the other sanctions the court may impose in "addition to or instead of" exclusion). Finally, the notion that district courts should consider the appropriateness of lesser sanctions where their discovery rulings have the effect of dismissal finds widespread accord in the decisions of our sibling circuits. *See, e.g.*, *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 79–80 (1st Cir. 2009) (finding that the "justification" for a Rule 37(c) sanction that carries the force of a

25

dismissal "must be comparatively more robust," and directing district courts to consider lesser alternatives); *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (applying Rule 37(c)(1), and finding that "the district court's discretion narrows as the severity of the sanction or remedy it elects increases"); *see also Bonds v. Dist. of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996) (discussing Rule 37 generally, and stating: "Particularly in the context of litigation-ending sanctions, we have insisted that '[s]ince our system favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success' or would obviously prove futile." (quoting *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986))).

In sum, where the exclusion of evidence under Rule 37(c)(1) has the necessary effect of a dismissal, as here, district courts should, in conjunction with the traditional *Woodworker's* inquiry, carefully explore and consider the efficacy of less drastic alternatives, ordinarily reserving the extreme sanction of dismissal for cases involving bad faith or willfulness or instances where less severe sanctions would obviously prove futile.[15]

# IV

Based on the foregoing, we **REVERSE** the district court's judgment in favor of

---

[15]    Although we adopt a lesser-sanctions approach to the exclusion of evidence under Rule 37(c)(1) where such exclusion necessarily results in dismissal, we express no opinion on the appropriate sanction (if any) in this case. Nor do we preclude the district court from ultimately concluding, after an appropriate evaluation of the *Woodworker's* factors and the efficacy of lesser sanctions, that the circumstances compel exclusion.

26

HCG on PPPC's counterclaims, and **REMAND** with instructions that the district court reevaluate the exclusion of PPPC's damages evidence under a *Woodworker's* analysis and consider, among other things, the availability of lesser sanctions.