**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DENILE GALE,

     Plaintiff - Appellant,

v.

UINTAH COUNTY, a political
subdivision of the State of Utah; LOREN
W. ANDERSON, Uintah County Attorney,
in his official and individual capacities;
JEFF MERRELL, Sheriff, in his official
and individual capacities,

     Defendants - Appellees.

No. 16-4099
(D.C. No. 2:13-CV-00725-TC)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **SEYMOUR**, and **LUCERO**, Circuit Judges.
_____

     Plaintiff Denile Gale ("Gale") appeals following a jury trial in a § 1983 action

Gale filed against Uintah County and then-Sheriff Jeff Merrell (collectively,

"Defendants"). Gale challenges the district court's order limiting the trial testimony

of one of Gale's witnesses.

     As relevant here, Gale was a corrections officer in the Uintah County Jail. In

December 2011, Merrell terminated Gale for distributing prescription-strength

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

ibuprofen to inmates who did not have a prescription for the drug.  Gale filed a § 1983 suit against Defendants, claiming that Merrell terminated him because he (Gale) campaigned for Merrell's challenger in the sheriff's election.  Thus, Gale argued, his termination violated his First Amendment rights and his right to procedural and substantive due process.  The jury found for Defendants on all claims.

Before trial, the district court partially granted Defendants' motion in limine, limiting the trial testimony of jail commander Lamar Davis ("Davis").  Gale now appeals, arguing that the district court abused its discretion when it limited Davis's trial testimony.[1]  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we remand with instruction that the district court reevaluate the limitation of Davis's trial testimony under the *Woodworker's Supply* and *HCG Platinum* analyses, and determine whether, in light of those considerations, Gale should be granted a new trial.

## I

In January 1995, Gale joined the Uintah County Sheriff's Office as a corrections officer in the Uintah County Jail.  In 2010, Gale openly campaigned for Rick Reynolds ("Reynolds") in the general election for county sheriff.  Reynolds was running against Merrell, who was seeking a second term as sheriff.  Merrell beat Reynolds and won reelection.

---

[1] Gale also appeals the district court's denial of Gale's motion for a new trial. Given the conclusions we reach here, we need not reach this second issue.

2

In the spring of 2010, Merrell oversaw a transition to a new Uintah County jail facility. The new building came with significantly more personnel, as well as more inmates. As a result, many of the holdover corrections officers had different responsibilities in the new jail than they had in the old jail. Gale filed a grievance complaining that many of his old responsibilities were given to other corrections officers. Despite the change in his responsibilities, Gale was neither formally demoted nor given reduced pay. In the old jail, Gale served as the medical officer. In the new jail, Amber Williams ("Williams") became the medical officer, primarily because she had a background in nursing.

On October 4, 2011, Williams notified Sgt. Rod Allen ("Allen") that 800mg pills of ibuprofen—which required a prescription at that dose—were missing from the top drawer of Williams's medical cart. The ensuing investigation revealed video evidence of Gale taking the prescription medication from the medical cart and distributing the pills to various inmates. Sgt. Leonard Isaacson ("Isaacson") interviewed Gale, who admitted to distributing the pills. Isaacson concluded that Gale distributed five pills that each contained 800mg of ibuprofen to inmates who did not have a prescription for 800mg pills of ibuprofen. He also concluded that Gale's actions violated four separate sections of the Uintah County Jail policy.

On December 2, 2011, Merrell conducted a meeting with Joe McKea ("McKea"), John Gothard ("Gothard"), Chief Deputy John Laursen ("Laursen"), Sgt.

3

Allen, and Davis to discuss Gale's conduct.[2] At the December 2, 2011 meeting, Merrell received input from those present about how he should proceed. Everyone present recommended termination. As sheriff, only Merrell could terminate Gale, and he had not yet decided to do so. But, that same day, Merrell did put Gale on paid administrative leave.

On December 14, 2011, Merrell received a formal letter from human resources that recommended terminating Gale. On December 16, 2011, Merrell served Gale with a notice of pre-disciplinary hearing, to occur on December 22, 2011.

At the December 22, 2011 hearing, Gale admitted to distributing prescription medication to inmates who did not have a prescription for the medication, but justified his actions by claiming that it was a practice he developed years earlier when he was the medical officer. After the hearing, Merrell again met with counsel before making a decision. On December 28, 2011, Merrell terminated Gale. Gale appealed his termination to the Career Service Council Board ("CSCB").

On August 2, 2012, the CSCB held a post-termination hearing for Gale. Several people testified, including Davis. As relevant to this appeal, Davis—who, as jail commander, supervised everyone at the jail, including Gale—testified about Gale's performance evaluations, Gale's practices as medical officer, Davis's former belief (articulated at the December 2, 2011 meeting with Merrell) that Gale should be

---

[2] McKea worked in human resources for Uintah County, and in Merrell's words, was the "expert on employment law" and "risk management." Aplt. App., Vol. II at 483–85. Gothard was an attorney in the Uintah County Attorney's Office. The County's hierarchy had Merrell at the top. Sgt. Allen reported to Davis, who reported to Laursen, who reported to Merrell.

4

terminated, and his then-held belief (as of the August 2, 2012 post-termination hearing) that Gale's discipline should be limited to three days without pay and a letter in his file. Notably, Davis did *not* testify about Gale's campaign activities at the post-termination hearing. The CSCB issued its findings and affirmed Gale's termination on September 10, 2012.

Gale filed his complaint on August 1, 2013, alleging that Defendants violated his First Amendment rights and his right to substantive and procedural due process. On February 7, 2014, Defendants submitted their initial disclosures, and included Davis as an individual who may have discoverable information. Gale filed his initial disclosures three days later. Gale did not mention Davis at any point in his *initial* disclosures.

On November 6, 2014, Defendants filed a motion for summary judgment. Gale filed his opposition on December 19, 2014. Attached to Gale's opposition was a declaration from Davis (the "Davis Declaration"). The Davis Declaration included the following paragraph:

> I was aware that Mr. Gale campaigned for Sheriff Merrell's challenger, Rick Reynolds, in the 2010 election. Actually, a lot of employees of the Sheriff's Office supported Mr. Reynolds discreetly, but Mr. Gale was open and vocal about his support of him. I knew about Mr. Gale's support of Mr. Reynolds because Mr. Gale told me, but this information was common knowledge in the community and the Sheriff's Office, and because of that, I am certain that Sheriff Merrell was also aware of Mr. Gale's support and campaign activities.

Aplt. App., Vol. II at 286.

5

Defendants filed their reply on January 16, 2015, and in it, moved to strike the Davis Declaration because Gale never identified Davis in his initial disclosures.

On August 4, 2015, the district court denied Defendants' motion for summary judgment. In a footnote, the district court denied Defendants' motion to strike the Davis Declaration:

> Defendants move to strike the Declaration of Lamar Davis (Dkt. No. 41-3) under Federal Rule of Civil Procedure 37 because Mr. Gale did not disclose Mr. Davis as a potential witness. (*See* Defendants' Reply Mem. Support Mot. Summ. J. (Dkt. No. 48) at xv.) When "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is <u>not allowed to use that information or witness to supply evidence on a motion</u>, at a hearing, or at a trial, <u>unless the failure</u> was substantially justified or <u>is harmless</u>." Fed. R. Civ. P. 37(c)(1) (emphasis added). A district court need not make explicit findings in its decision, but four factors should be considered: (1) prejudice or surprise; (2) ability to cure prejudice, if any; (3) extent to which the testimony would disrupt a trial; and (4) bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).
>
> Considering the circumstances and factors listed in *Woodworker's Supply*, the court concludes that Plaintiff's failure to list Mr. Davis as a potential witness was harmless. During the summary judgment motion hearing, Mr. Gale's attorney noted that the Defendants listed Mr. Davis as a potential witness in their pre-trial disclosures. Indeed, the Defendants have known about Mr. Davis and the scope of his knowledge since before this litigation began (Mr. Davis testified at Mr. Gale's post-termination hearing). And there is no evidence of bad faith on Mr. Gale's part. Accordingly, the court denies Defendants' motion to strike. *See, e.g.*, *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) (failing to disclose witnesses was harmless because the party moving to strike "knew the names of [non-movant's] witnesses and the scope of their relevant knowledge well before trial" and there was no evidence of bad faith); 1993 Advisory Committee Notes to the Federal Rules of Civil Procedure (the "inadvertent omission from a Rule

6

26(a)(1)(A) disclosure of the name of a potential witness known to all parties" and "failure to list as a trial witness a person so listed by another party" are examples of harmless violations).

*Id.*, Vol. I at 123–24 n.8.

On January 8, 2016, Gale filed his *pretrial* disclosures, listing Davis as an expected witness. Defendants filed a motion in limine on January 15, 2016, seeking, in part, to exclude Davis as a witness. On February 9, 2016, the district court granted in part Defendant's motion. With respect to permitting Davis as a witness, the district court limited his testimony as follows:

> Lamar Davis's testimony is limited to topics arising out of his testimony at the post-termination hearing. The court will reconsider its decision on the scope of Mr. Davis's testimony if Plaintiff provides authority supporting Mr. Gale's argument that once the Defendants listed Mr. Davis as a witness, he was not obligated to list Mr. Davis or limit Mr. Davis's testimony to the topic identified by the Defendants in their initial disclosures, or to list Mr. Davis in any supplemental disclosures.

Aplt. App., Vol. I at 188–89. The district court did not discuss *Woodworker's Supply*, nor did it address the change from its earlier decision to allow the Davis Declaration at summary judgment without limitation. As the district court's ruling limited Davis's testimony to the testimony he gave at Gale's post-termination hearing, Davis could not testify at trial about Gale's campaign activities.

The trial started that same day. Davis was Gale's first witness. On February 12, 2016, at the conclusion of the trial, the jury returned a unanimous verdict in Defendants' favor.

Gale now timely appeals.

## II

On appeal, Gale argues that the district court abused its discretion by precluding Davis from testifying about Gale's campaign activities. "We review a district court's exclusion of evidence for an abuse of discretion." *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995).

There are two Federal Rules of Civil Procedure that are relevant here. First, Rule 26(a) requires parties to identify potential witnesses in their initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). Second, Rule 37(c) states that, if a party fails to identify a witness as required by Rule 26(a), then "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The seminal Tenth Circuit case that addresses Rule 26(a) violations is *Woodworker's Supply, Inc. v. Principal Mutual Life*, 170 F.3d 985 (10th Cir. 1999). There, the defendant argued that the plaintiff failed to properly disclose its damages theory before trial, and when the theory was first discussed during trial testimony, the district court should have excluded the evidence (and erred in failing to do so). *Id.* at 992–93. In reviewing the district court's decision to allow the evidence, we established a four-part test:

> The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court. A district court need not make explicit findings concerning the existence of a substantial justification or the

8

harmlessness of a failure to disclose.[3]  Nevertheless, the following factors should guide its discretion:  (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Id.* at 993 (internal quotation marks and citations omitted).

Recently, in *HCG Platinum, LLC v. Preferred Product Placement Corp.*, 873 F.3d 1191 (10th Cir. 2017), which was issued after the district court ruled in the present case, we expanded on *Woodworker's Supply*.  There, in response to a discovery violation, the district court "impos[ed] a discovery sanction (i.e., exclusion of evidence) that necessarily barred [the defendant] from pursuing its counterclaims." *Id.* at 1201.  In doing so, the district court did not discuss three of the four factors articulated in *Woodworker's Supply*.  *Id.*  Nor did the district court explain why it initially "expressed a clear inclination towards *denying* [the plaintiff's] motion," but later "adopt[ed] a conclusion that ran inexplicably counter to its initial leanings." *Id.* at 1202–03.

We held that these two failures were each, independently, an abuse of discretion.  First, we held that the district court erred when it "overlooked the lion's share of the *Woodworker's* inquiry."  *Id.* at 1201.  And second, "[t]he district court's

---

[3] This language—"substantial justification" and "harmlessness"—is taken directly from Rule 37(c).  When *Woodworker's Supply* was decided, Rule 37(c) was worded slightly differently.  However, Rule 37(c) did include, as it does today, the requirement to exclude evidence unless there is "substantial justification" or "such failure is harmless."  *Woodworker's Supply*, 170 F.3d at 933 (quoting Fed. R. Civ. P. 37(c)(1)).

failure to explain its sharp change of analytic direction in ultimately *granting* HCG's

motion, in itself, constitutes an abuse of discretion." *Id.* at 1203.

### III

We begin with the district court's consideration of the factors identified in

*Woodworker's Supply*. On February 9, 2016, the district court—ruling on

Defendants' motion in limine to exclude Gale's proposed witnesses—limited Davis's

testimony "to topics arising out of his testimony at the post-termination hearing."

Aplt. App., Vol. I at 188–89. This ruling did not, however, address any of the

*Woodworker's Supply* factors. Instead, it simply explained:

> Lamar Davis's testimony is limited to topics arising out of his
> testimony at the post-termination hearing. The court will
> reconsider its decision on the scope of Mr. Davis's testimony if
> Plaintiff provides authority supporting Mr. Gale's argument that
> once the Defendants listed Mr. Davis as a witness, he was not
> obligated to list Mr. Davis or limit Mr. Davis's testimony to the
> topic identified by the Defendants in their initial disclosures, or
> to list Mr. Davis in any supplemental disclosures.

*Id.* In effect, the district court prevented Davis from testifying about Gale's support

for Merrell's opponent in the preceding sheriff's election because Davis did not

testify about Gale's campaign activities at Gale's post-termination hearing.

"[A]lthough a district court need not mechanically recite the terms 'substantial

justification' or 'harmlessness,' the district court's ultimate reasoning *should* reveal

consideration of the *Woodworker's* criteria." *HCG Platinum*, 873 F.3d at 1201

(emphasis in original). Where a district court does not consider the *Woodworker's*

*Supply* factors, the "failure to consider this criteria amounts to legal error, and we

10

must conclude that the district court abused its discretion on that ground alone." *Id.* at 1202. Here, the district court failed to consider the *Woodworker's Supply* criteria when limiting Davis's trial testimony. This was an abuse of discretion.

Next, we turn to the inconsistency of the district court's rulings. The district court's February 9, 2016 order—partially granting Defendants' motion in limine to limit Davis's trial testimony—followed an August 4, 2015 summary judgment order that unequivocally "denie[d] Defendants' motion to strike" the Davis Declaration. Aplt. App., Vol. I at 123–24 n.8. In the August 4, 2015 order, the district court cited *Woodworker's Supply* and addressed its factors by reasoning that "Defendants listed Mr. Davis in their pre-trial disclosures" and that "Defendants have known about Mr. Davis and the scope of his knowledge since before this litigation began." *Id.* The district court further found "no evidence of bad faith on Mr. Gale's part." *Id.* As a result, it "conclude[d] that [Gale]'s failure to list Mr. Davis as a potential witness was harmless." *Id.*

Defendants argue that the two rulings are not inconsistent, pointing to the following parenthetical in the district court's August 4, 2015 order: "Indeed, the Defendants have known about Mr. Davis and the scope of his knowledge since before this litigation began (*Mr. Davis testified at Mr. Gale's post-termination hearing*)." Aplt. App., Vol. I at 123 n.8 (emphasis added). Defendants rely on this parenthetical to argue that the August 4, 2015 order also limited the Davis Declaration to Davis's testimony at Gale's post-termination hearing.

11

Defendants' argument is not convincing.  The footnote (in which the district court denied Defendants' motion to strike) immediately follows a sentence that states:

> Lamar Davis, the Jail Commander at the time (he held that position for five years), knew about Mr. Gale's support for Mr. Reynolds during the election.  "Actually, a lot of employees of the Sheriff's Office supported Mr. Reynolds discreetly, but Mr. Gale was open and vocal about his support of him."  (Decl. of Lamar Davis (Dkt. No. 41-3) ¶ 3 (attached as Ex. C to Pl.'s Opp'n Mem.).)

Aplt. App., Vol. I at 123.  The district court's August 4, 2015 order explicitly relied on the Davis Declaration's discussion of Gale's campaign activities, a topic that Davis did not discuss at Gale's post-termination hearing.  Yet, six months later, the district court limited Davis's trial testimony "to topics arising out of his testimony at the post-termination hearing."  *Id.* at 188–89.  In doing so, the district court failed to explain why it reached "a conclusion that ran inexplicably counter to its initial leanings."  *HCG Platinum*, 873 F.3d at 1203.  This too was an abuse of discretion.  *See id.* ("The district court's failure to explain its sharp change of analytic direction in ultimately *granting* [the plaintiff's] motion, in itself, constitutes an abuse of discretion.").

12

## IV

We remand with instruction that the district court reevaluate the limitation of Davis's trial testimony under the *Woodworker's Supply* and *HCG Platinum* analyses, and determine whether, in light of those considerations, Gale should be granted a new trial.

Entered for the Court


Mary Beck Briscoe
Circuit Judge